In the Matter of KAREN W. SHEEHAN, Individually and as President of the New York Chapter of the American Physical Therapy Association, Inc., et al., Respondents, v GORDON M. AMBACH, as Commissioner of the New York State Department of Education, et al., Appellants.

Third Department, March 10, 1988

APPEARANCES OF COUNSEL

*James H. Whitney (Donald O. Meserve* of counsel), for appellants.

*Ingerman, Smith, Greenberg, Gross, Richmond, Heidelberger & Reich (John J. Gross* of counsel), for respondents.

*Helm, Shapiro, Anito & Aldrich, P. C. (Wayne Schneider* of counsel), for New York State Occupational Therapy Association, Inc., *amicus curiae.*

## OPINION OF THE COURT

LEVINE, J.

This proceeding was brought to challenge certain guidelines circulated by respondents concerning permissible modalities of evaluation and program activities by occupational therapists. Petitioners are licensed physical therapists and/or represent an association of professional physical therapists. The Education Law defines physical therapy as the "evaluation, treat-

ment or prevention of disability, injury, disease, or other condition of health", using various specified (but not exclusive) physical, chemical and mechanical means (Education Law § 6731 [a]). The Education Law also includes a definition of the practice of the profession of occupational therapy as "the functional evaluation of the client and the planning and utilization of a program of purposeful activities to develop or maintain adaptive skills, designed to achieve maximal physical and mental functioning of the patient in his daily life tasks" (Education Law § 7901).

In answer to inquiries from members of both professions, respondents formed a joint practice committee (hereinafter the committee) to consider which, if any, of the statutory modalities of treatment and evaluation utilized by physical therapists could be employed within the scope of the practice of occupational therapy. The committee was composed of the chairs and vice-chairs of the State Boards for Occupational Therapy and Physical Therapy with appropriate State Education Department support staff. Guidelines were prepared by the committee and disseminated to interested health-care providers. The guidelines set forth various procedures which "under appropriate conditions" could be performed by occupational therapists "to the extent that they are used in the course of a functional evaluation or purposeful activity". They also included various modalities which were not considered to be within the scope of the practice of that profession.

The petition seeks annulment of the guidelines on three grounds: (1) that the guidelines are regulatory rules which are invalid unless formally adopted as rules or regulations, (2) that the guidelines are ineffective because respondents did not involve the entire memberships of both State Boards, and (3) that certain activities permitted under the guidelines violate restrictions in the Occupational Therapy Act (Education Law art 156). Respondents filed objections in point of law and an answer in which, *inter alia,* they raised the objection that petitioners lack standing to challenge the guidelines. Supreme Court overruled respondents' legal objections to the causes of action in the petition and found standing. The court also held that the guidelines had to be promulgated as a formal rule or regulation and that the procedures which occupational therapists are allowed to perform thereunder are violative of the Occupational Therapy Act. Accordingly, a judgment annulling the guidelines was granted. This appeal ensued.

We reverse. First, petitioners, as licensed physical thera-

pists, have failed to establish that they have standing to seek judicial review of the guidelines relating exclusively to activities within the practice of the profession of occupational therapy. Standing, in general, requires that a petitioner show that "the administrative action will in fact have a harmful effect on the petitioner and that the interest asserted is arguably within the zone of interest to be protected by the statute" *(Matter of Dairylea Coop. v Walkley,* 38 NY2d 6, 9). However, more is required than merely the interest of the general public-at-large; "the petitioning party must have a legally cognizable interest that is or will be affected" *(Matter of Sun-Brite Car Wash v Board of Zoning & Appeals,* 69 NY2d 406, 413). Petitioners' interest in respondents' enforcement or interpretation of licensure requirements for occupational therapists and petitioners' apprehension that occupational therapists under the guidelines will be able to perform procedures on patients for which they have inadequate education and training or professional experience represents nothing more than a concern for the protection of the general public.

Moreover, petitioners have not shown that they have any cognizable interest in preventing occupational therapists from performing the statutorily authorized activities of physical therapists, except their desire to be protected from the competition of other professionals in performing such services, a fact they candidly admit in their papers before Supreme Court. However, their interest in protection from the economic impact of competition is not sufficient to confer standing unless the statute reveals that such protection was within the legislative purposes *(see, Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, supra,* at 415; *Arnot-Ogden Mem. Hosp. v Guthrie Clinic,* 122 AD2d 413, 414, *lv denied* 68 NY2d 612; *New York Hearing Aid Socy. v Children's Hosp. & Rehabilitation Center,* 91 AD2d 333, 334, *lv dismissed* 59 NY2d 607, 915). Petitioners have not cited any provision in the professional licensure sections of the Education Law indicating that one of the statutory purposes was to protect members of the professions from competition. Indeed, if anything, the indication is to the contrary. Education Law § 6505 provides that "[n]o definition of the practice of a profession shall be construed to restrain or restrict the performance of similar acts authorized in the definition of other professions".

Likewise, petitioners are not entitled to standing under the holding in *Boryszewski v Brydges* (37 NY2d 361). Denial of standing to petitioners will not create an "impenetrable bar-

rier to any judicial scrutiny" of the guidelines *(supra,* at 364). There are other persons, including patients in need of rehabilitative procedures and other health-care providers, e.g., hospitals and physicians, directly availing themselves of the services of occupational therapists for their patients, whose legitimate interest in the permissible scope of the practice of occupational therapy might well be sufficient to establish standing. Moreover, physicians are statutorily protected from intrusions by occupational therapists into the practice of medicine *(see,* Education Law § 7901). Thus, judicial review of the guidelines is possible without awarding petitioners standing to challenge them.

■ Were we to have found standing here, a determination on the merits would also require dismissal of the petition. The guidelines by their own terms are explanatory and advisory, to be followed "under appropriate conditions" insofar as they permit occupational therapists to perform certain procedures. Thus, they do not represent "a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers" *(Matter of Roman Catholic Diocese v New York State Dept. of Health,* 66 NY2d 948, 951). Therefore, the guidelines need not have been formally adopted as a rule or regulation in order to be valid. Similarly, we find nothing in the statute which would have required respondents to convene the full memberships of both the State Boards for Physical Therapy and Occupational Therapy before issuing them *(see,* Education Law § 6508).

■ Finally, we disagree with Supreme Court's conclusion that the guidelines exceeded respondents' legislative authority. The statutory definition of the practice of the profession of occupational therapy is couched in general terms and omits any delineation of the permissible modalities of the "evaluation of the client * * * and utilization of a program of purposeful activities to develop or maintain adaptive skills" (Education Law § 7901). Clearly, it was left to the administrative expertise of respondents, the agency assigned the task of regulating the professions, to fill in the details as to what activities are permitted under the general definition of the practice of occupational therapy *(see, Chiropractic Assn. v Hilleboe,* 12 NY2d 109, 120-121). As previously noted, the Education Law itself envisages an overlap between the permissible modes of treatment among the professions *(see,* Education Law § 6505). Consistent with the statutory definition of

the practice of occupational therapy, the guidelines limit authorization to perform various procedures to those done "in the course of a functional evaluation or purposeful activity". We deal here not with a question of pure statutory interpretation and analysis, but one in which interpretation and implementation of the legislation necessarily "involves knowledge and understanding of underlying operational practices" *(Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459). Therefore, we are required to defer to the agency entrusted with the responsibility for the administration of the statute *(supra,* at 459). Since petitioners have not shown that respondents' interpretation or implementation of the Occupational Therapy Act is unreasonable or irrational, the guidelines must be upheld *(see, supra,* at 459).

KANE, J. P., YESAWICH, JR., and HARVEY, JJ., concur.

Judgment reversed, on the law, without costs, and petition dismissed.