OPINION OF THE COURT
Joseph C. Teresi, J.
Petitioners bring this combined CPLR article 78 and declaratory judgment action seeking a ruling that would declare the emergency rule repealing 6 NYCRR 326.2 (b) (10) invalid, null and void.
Respondents oppose the petition alleging that the petitioners do not have standing to maintain the proceeding and that the petitioners have failed to state a cause of action.
Initially this court determines that the petitioners do have standing to maintain the action. Three of the petitioners maintain that they have standing as representatives of constituents who may be injured by DEBT products. Also, these members assert their standing as individuals and as parents of young children who may be affected. It is also noted that respondents do not challenge the standing of petitioners Citizens Environmental Coalition; Pamela Botway; Jeanne A. Greco; Long Island Coalition for Alternatives to Pesticides or Natural Resources Defense Council, Inc. Therefore, as the three challenged respondents do have standing capability as individuals and the remaining petitioners are unchallenged the court finds standing and will decide the petition on the merits.
As to the petition the court must review the history of 6 NYCRR 326.2 (b) (10), the DEBT regulation, which was *512 adopted on April 3, 1992. This regulation’s validity was previously challenged in Albany County, Supreme Court pursuant to CPLR article 78. That court invalidated the DEBT regulation. The Department of Environmental Conservation (DEC) appealed that ruling and the validity of the DEBT regulation was upheld in both the Appellate Division, Third Department, on May 5, 1994, and the Court of Appeals on February 9, 1995 (Matter of Chemical Specialties Mfrs. Assn. v Jorling; 197 AD2d 314, affd 85 NY2d 382) after what can only be described as a zealous and successful defense of the DEBT regulation by DEC. It should also be noted that the adoption of 6 NYCRR 326.2 (b) (10) followed the normal procedure for enactment of a regulation including extensive public comment and significant evidence as recognized by the Court of Appeals while upholding the DEBT regulation. As described by that Court:
"DEC’S background documents and assessment of public comments detail 44 scientific studies and empirical data that indicate that use of high concentration DEBT products may cause adverse health effects. In addition, the affidavit of Nancy Kim, PhD, the State Department of Health Director of the Division of Environmental Health Assessment, fully explains and documents the ample support for the conclusion that DEBT in concentrations above 30% is dangerous to health, particularly to that of children. Specifically the conclusion that high concentration DEBT products are dangerous to children is supported by a World Health Organization technical report prepared by an expert committee on vector biology, an EPA published book (Morgan, Recognition and Management of Pesticide Poisoning [4th ed]), a United States Department of Defense study, a professor at Harvard School of Public Health, the medical directors of various poison control centers, and health officials from New Jersey, Connecticut, Massachusetts and Maine. Moreover, as Dr. Kim pointed out, petitioners, although invited to do so, provided no credible evidence to support their claims that a higher concentration of DEBT would significantly increase its effectiveness as a deer tick repellant.
"The affidavits of Dr. Kim and Dr. Dennis White, Director of the Arthropod-borne Disease Program and Director of the Tick-Borne Disease Institute for the State of New York, as well as the report by the Bureau of Toxic Substances Assessment of the New York State Department of Health, establish that the agency evaluated the dangers to health of higher concentrations of DEBT, the evidence that the mosquito-repellant *513 effectiveness of DEBT in higher concentrations than 30% was not significantly enhanced, the evidence that low concentrations of DEBT are 90% effective against ticks when used on clothing, and the lack of hard evidence one way or the other regarding DEET’s effectiveness against deer ticks when used on human skin in high concentrations.” (85 NY2d, at 395-396, supra.)
Based upon those findings the Court of Appeals found that the record below contained sufficient evidence to provide a rational basis for the State Commissioner’s conclusion that the detrimental side effects from the human use of high concentration DEBT products outweigh possible benefits from their use.
The record before this court shows that immediately after the Court of Appeals decision representatives of the manufacturers of products containing DEBT met with Robert L. King, Director of Governor’s Office of Regulatory Reform, regarding 6 NYCRR 326.2 (b) (10). Thereafter letters from the Executive Chamber were sent to the Deputy Commissioner of DEC strongly urging that department to reexamine the ban of DEBT products exceeding 30%. Subsequently, on March 17, 1995 the Commissioner of the Department of Health (DOH) Barbara A. DeBuono, M.D. wrote to Commissioner Zagata of DEC concluding that "the public Health, safety and welfare would best be served by the repeal of 6 NYCRR 326.2 (b) (10)”. On March 20, 1995 DEC requested an exception from Executive Order No. 2* and sought an emergency rule regarding the repeal of 6 NYCRR 326.2 (b) (10). According to the record on March 16th (four days before that request) DEC had already been authorized by Robert L. King to file a notice of emergency adoption for the DEBT rule. This authorization was sent on March 21, 1995.
On March 21, 1995 DEC adopted the emergency rule repealing the DEBT regulation. Petitioners challenge that adoption on the grounds of State Administrative Procedure Act violations and the fact that the repeal was arbitrary and capricious and an abuse of discretion. For the reasons stated below this court will grant the relief sought by the petitioners.
First, as stated in State Administrative Procedure Act § 202 (6) in pertinent part:
*514 "6. Notice of emergency adoption, (a) [Eff. Apr. 1, 1994. See, also, par. (a) above.] Notwithstanding any other provision of law, if an agency finds that the immediate adoption of a rule is necessary for the preservation of the public health, safety or general welfare and the compliance with the requirements of subdivision one of this section would be contrary to the public interest, the agency may dispense with all or part of such requirements and adopt the rule on an emergency basis.
"(b) Unless otherwise provided by law, such emergency rule shall not remain in effect for longer than ninety days after being filed with the secretary of state unless within such time the agency complies with the requirements of subdivision one of this section and adopts the rule pursuant to the provisions of subdivision five of this section, provided, however, if such emergency rule is readopted prior to the expiration of such ninety day period such readoption and any subsequent readoptions shall remain in effect for no longer than sixty days.
"(c) An emergency rule which is in regard to security authorizations, corporate or financial structures or reorganization thereof, and for which statute does not require that a public hearing be held prior to adoption, shall not expire pursuant to the provisions of paragraph (b) of this subdivision if the agency finds that the purpose of the rule would be frustrated if subsequent notice procedures were required.
"(d) A notice of emergency adoption shall:
"(i) cite the statutory authority, including particular sections and subdivisions, under which the rule is adopted;
"(ii) state whether the notice shall also constitute a notice of proposed rule making for the purposes of subdivision one of this section, and if so, give the date, time and place of any public hearing or hearings which are scheduled;
"(iii) state whether the notice shall also constitute a notice of revised rule making for the purposes of subdivision four-a of this section, and if so, include all information required by such subdivision; and
"(iv) [Eff. Apr. 1, 1994. See, also, subpar. (iv) above.] contain the findings required by paragraphs (a) and (c) of this subdivision and include a statement fully describing the specific reasons for such findings and the facts and circumstances on which such findings are based. Such statement shall include, at a minimum, a description of the nature and, if applicable, location of the public health, safety or general welfare need requiring adoption of the rule on an emergency basis; a *515 description of the cause, consequences, and expected duration of such need; an explanation of why compliance with the requirements of subdivision one of this section would be contrary to the public interest; and an explanation of why the current circumstance necessitates that the public and interested parties be given less than the minimum period for notice and comment provided for in subdivision one of this section.” (Emphasis supplied.)
It is the decision of this court that State Administrative Procedure Act § 202 (6) (d) (iv) requires at the very least that an agency seeking an emergency rule adoption illustrate the circumstances which give rise to the adoption of a rule on an emergency basis. The mere parroting of the phrase "the public health, safety, or general welfare” with no specific facts demonstrates to this court the total absence of justification for such action. Without detailing the necessity of the adoption of a rule on an emergency basis the danger of abuse is obvious. In this case the manufacturing industry responsible for DEBT has accomplished in weeks what it could not do in prior recent years during hearings and before the courts. The practice avoids those regulatory safeguards in place and which are mandated to preclude such avoidance of State Administrative Procedure Act § 202 (6) (d) (iv). The requirement of a submitted statement fully describing the specific reasons the "public health, safety or general welfare” are in danger is a reasonable condition precedent which has not been satisfied.
The State has failed to comply with the minimal requirements of the State Administrative Procedure Act. Simply put this record is devoid of any finding of immediate necessity, emergency, or undue delay because of a failure to follow the State Administrative Procedure Act "statement” requirement fully describing the specific reasons for such findings and facts. Further the notice of adoption did not explain in any detail why compliance with normal rule-making procedure would be contrary to the public interest or why the current circumstances necessitate the use of emergency rule-making procedure.
Additionally, the actions of DEC are indeed arbitrary, capricious and an abuse of discretion. This court finds that action to be repugnant. A full review of this record fails to show any new factors to rationally justify this complete turnaround by DEC. Although it is true an agency may change its position there must be a rational basis for such a change. DEC completely relies on DOH who mainly relies on one study con *516 ducted by the very same industry it is regulating. This is after a three-year period in which DEC successfully argued for and convinced the Appellate Division, Third Department, and the Court of Appeals that full strength DEBT may cause adverse health effects. During that litigation DEC relied on over 40 studies to support its position. In justifying this present position DEC merely speculates that higher concentrations of DEBT "may be necessary” to effectively repel deer ticks from human skin. Even more incredible, DEC states that "many manufacturers have included additional warnings on their labels and several have changed the means of application”. (Respondents’ exhibit 4.) However, there is no information provided on the detail or language of those labels or change in the means of application beyond that generalized statement.
If this court were to accept respondents’ rationale premised upon the promises from a self-interested industry the need for any regulations would be abrogated, leaving the responsibility for the welfare of New York residents to those self-interested industries rather than DOH or DEC who are ultimately responsible to protect those citizens.
Respondents state that the United States Environmental Protection Agency is implementing a label improvement program for DEBT products and its Commissioner believes that a vigorous and focused educational program will mitigate the health risks. All of these are possible and speculative future protections with no mention of their present effectiveness.
There is a complete absence of any rational basis for the DEC’S reasoning. After taking three years to demonstrate the dangers of DEBT, DEC with the help of DOH and the Governor’s Office have, without public comment, sought to reexpose New York residents to a health danger with no showing of an emergency. Even if this court were to accept Commissioner DeBuono’s. affidavit of April 25th as retroactive justification for the action taken it does not illustrate any articulable justification for the emergency rule.
As stated by the Court of Appeals in Board of Visitors— Marcy Psychiatric Ctr. v Coughlin (60 NY2d 14, 20 [1983]): "The standard of review is not whether we or the courts below would conclude that a limited emergency exists; it is rather whether the determination by the Commissioner of Correctional Services that such an emergency exists was irrational or arbitrary or capricious.”
Before this court is a voluminous evidence demonstrating *517 the serious health dangers of DEBT as determined by DEC. Incredibly after meeting with industry representatives, Mr. Robert King, Director of the Governor’s Office of Regulatory Reform, contacted Commissioner DeBuono who then reviewed the limited information supplied and the relative Lyme disease figures and suggested that DEC was suddenly incorrect in relying on those volumes of evidence and convinced DEC to repeal 6 NYCRR 326.2 (b) (10) with an emergency rule. This court cannot sanction such a blatant attempt to reward industry with less regulation without any opportunity for public comment or notice. This record also clearly shows the impetus for this repeal originated neither from DOH nor DEC but rather from Mr. King, after meeting with representatives of the manufacturers of DEBT. Mr. King’s letter places almost complete reliance on industry representatives with no mention of the three-year process undertaken by DEC to ban 100% DEBT products, complete with hearings, studies and public comments.
Absent any showing of emergency or immediate need coupled with the fact that DEC spent three years proving the dangers of DEBT, this court finds DEC’s action to be arbitrary and capricious. For DEC to defer completely to DOH who in return relies on the self-interested DEBT industry is offensive to this court and does not justify an emergency rule adoption but rather highlights the need for compliance with normal rule-making procedure.

 Executive Order No. 2 issued January 5, 1995 imposing a moratorium on the adoption of any rules and regulations for 90 days subject to certain exceptions. Without a waiver of this DEC would have been precluded from repealing 6 NYCRR 326.2 (b) (10).