OPINION OF THE COURT
Dan Lamont, J.
Petitioners, New York State Association of Criminal Defense Lawyers, and Jeffrey T. Schwartz, Michael L. Fishman, Ray Kelly and Dan Henry (petitioners), bring this CPLR article 78 proceeding seeking a judgment vacating, nullifying and setting aside an order issued by the Judges of the Court of Appeals in their administrative capacity on December 16, 1998, which order approved a substantially lower schedule of fees to be paid *87 to court-appointed, counsel for defendants in capital cases in New York State.
The respondents have submitted an answer which asserts the following objections in point of law: (a) the petitioners lack standing to maintain this proceeding; and (b) the petition fails to state a cause of action.
BACKGROUND
In 1995 the Legislature enacted the death penalty statute which provided for the imposition of a sentence of death upon a defendant convicted of the crime of murder in the first degree. (L 1995, ch 1.) The Legislature simultaneously enacted Judiciary Law § 35-b which creates the Capital Defender Office, to be governed by a three-member Board of Directors — one appointed by the Chief Judge of the Court of Appeals; one appointed by the temporary President of the Senate; and one appointed by the Speaker of the Assembly.
Judiciary Law § 35-b (5) (a) also creates a four-member screening panel in each judicial Department — consisting of two members appointed by the Board of Directors of the Capital Defender Office, and two members appointed by the Presiding Justice in each Department. Judiciary Law § 35-b (5) (a) further provides that each screening panel: (1) shall establish and update a roster of attorneys qualified for appointment as lead counsel and associate counsel to represent indigent defendants in capital cases; and (2) shall promulgate and periodically update, in consultation with the Administrative Board of the Courts, a schedule of fees for qualified counsel for defendants in capital cases, which schedule of fees shall be subject to the approval of the Court of Appeals. The Administrative Board of the Courts consists of the Chief Judge of the Court of Appeals and the Presiding Justices of each of the four judicial Departments.
The screening panels in December 1995 and January 1996 initially submitted their proposed schedules of fees to the Court of Appeals. After inviting and considering public comment on the proposed fees, the Court of Appeals in its administrative capacity wrote the screening panels in March 1996 requesting further data, further documentation, and further analysis and consideration. After receiving further input, the Court of Appeals concluded that attorney’s fees should be established at uniform State-wide rates; that fees for lead counsel would not be approved at a rate higher than $175 an hour, and that compensation for associate counsel would not be approved at a *88 rate higher than $150 an hour; that in-court and out-of-court work would be compensated at the same rate; and that the Judiciary Law authorized compensation for certain .legal and paralegal assistance which would not be approved at a rate higher than $40 per hour for legal assistance or at a rate higher than $25 per hour for paralegal assistance.
The screening panels thereafter promulgated and submitted fee schedules revised accordingly, and the Court of Appeals on November 21, 1996 issued orders approving such fee schedules. The schedule of fees initially approved by the Court of Appeals on November 21, 1996 set fees for lead counsel at no higher than $175 an hour and for associate counsel at no higher than $150 an hour — without any differentiation for in-court and out-of-court work — and provided that legal assistance would not be approved at a rate higher than $40 an hour, and paralegal assistance would not be approved at a rate higher than $25 an hour. The Court of Appeals in a press release issued on November 21, 1996, called for a review as of September 1997 by each screening panel of its respective fee schedule and the effect each such schedule has had upon the pool of available attorneys competent and willing to provide a capital defense.
On September 22, 1997, the Court of Appeals directed the screening panels to re-examine the fee schedules; to review available empirical data thus far; and to submit an assessment of certain specified issues pertaining to the fee schedules to the Court of Appeals for consideration. Thereafter, the respective screening panels for the four Departments, in consultation with the Administrative Board of the Courts, engaged in a review of the fee schedules and a review of empirical data and experience with the fee schedules.
The Administrative Board of the Courts believed that fees should be uniform throughout the State; that the hourly fees applicable to services rendered after the prosecution announces its intent to seek the death penalty should be higher than those applied to work done before such announcement; that no distinction in rates should be made between in-court and out-of-court services; and that the Trial Judge should have the discretion to reduce the fee request where appropriate. The Administrative Board also believed that lead counsel should be compensated at hourly rates of $125 for post-notice service, and $100 for pre-notice service; and that associate counsel should be compensated at hourly rates of $100 for post-notice service, and $75 for pre-notice service.
In June 1998, after additional consultation with the Administrative Board of the Courts, the screening panels for the *89 Second, Third, and Fourth Departments agreed with the fee schedule revisions as urged by the Administrative Board, and forwarded their updated promulgated schedule of fees to the Court of Appeals with the recommended fee schedule of: pre-death notice: lead counsel $100 per hour, associate counsel $75 per hour; post-death notice: lead counsel $125 per hour, associate counsel $100 per hour. The recommendations of the Third and Fourth Department screening panels were unanimous. One member of the Second Department screening panel dissented.
The First Department screening panel was evenly divided: two members of the screening panel proposed adoption of the fee schedule recommendations of the Administrative Board of the Courts, whereas the other two members of the screening panel recommended that the existing fee schedule not be changed.
The Court of Appeals on June 30, 1998 invited public comment, and thereafter reissued its notice of public comment on August 13, 1998 — with the public comment period to expire September 30, 1998. In addition to the public comment, the Court of Appeals also considered various statistical and financial data submitted by the Capital Defender Office, a study prepared for the Federal courts, and a study prepared for the American Bar Association relative to assigned counsel compensation in capital cases. On December 16, 1998, the Court of Appeals issued an order approving the revised fee schedules as promulgated by three of the four departmental screening panels, and approving the same revised fee schedule as submitted by two of the four members of the First Department screening panel, in the following amounts: $125 per hour for lead counsel’s post-notice work; $100 per hour for associate counsel’s post-notice work; $100 per hour for lead counsel’s pre-notice work; $75 per hour for associate counsel’s pre-notice work; $40 per hour for reasonably necessary additional legal assistance; and $25 per hour for reasonably necessary paralegal assistance. The Court of Appeals ordered that the newly approved rates would apply to legal services rendered under orders of assignment made after January 1, 1999. The Court of Appeals also ordered the screening panels to submit their next periodic reviews and updates by December 31, 1999.
THE APPLICABLE STATUTE
Judiciary Law § 35-b (5) (a) provides in applicable part as follows: “5. (a) A screening panel shall be established in each *90 judicial department consisting of four members, two of whom shall be appointed by the board of directors of the capital defender office and two of whom shall be appointed by the presiding justice of each judicial department * * * Each screening panel shall also promulgate and periodically update, in consultation with the administrative board of the judicial conference [sic: should read: ‘Administrative Board of the Courts’], a schedule of fees to be paid attorneys pursuant to this section in each department, which schedule shall be subject to the approval of the court of appeals. Prior to approving fee schedules, the court shall invite the submission of written comments from interested parties. Fee schedules shall be promulgated and approved after reviewing the rates of compensation generally paid in the department to attorneys with substantial experience in the representation of defendants charged with murder or other serious felonies, and shall be adequate to ensure that qualified attorneys are available to represent defendants eligible to receive counsel pursuant to this section.”
STANDING
In this court’s view, the question of standing constitutes the more difficult and sophisticated issue presented herein for resolution. The issue of standing “presents some knotty conceptual issues and is litigated with regularity” (Borchers and Markell, New York State Administrative Procedure and Practice § 7.2, at 196 [2d ed]). “The harder cases involve persons who have a stake in the outcome of the administrative process, but whose injury is less direct or substantial” than those persons who are parties to the administrative process {id., § 7.3, at 196-197 [2d ed]).
“The standing of a party to seek judicial review of a particular claim or controversy is a threshold matter which, once questioned, should ordinarily be resolved by the court before the merits are reached” (Matter of Hoston v New York State Dept. of Health, 203 AD2d 826, 827 [3d Dept 1994], citing Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 769 [1991]; Matter of New York State Nurses Assn. v Axelrod, 152 AD2d 888, 890 [3d Dept 1989]). “A party does not have standing to contest an administrative determination unless he or she has in fact been injured by the decision. Moreover, to confer standing, the injury must fall within the ‘zone of interests’ that the pertinent statute aims to protect or promote (see, Society of Plastics Indus. v County of Suffolk, supra, at 772-773), and it *91 must be different in degree or kind from that suffered by the general public (see, Matter of Sheehan v Ambach, 136 AD2d 25, 28, lv denied 72 NY2d 804)” (Matter of Hoston v New York State Dept. of Health, supra, at 827).
The petitioner bears the burden of establishing standing (see, Society of Plastics Indus. v County of Suffolk, supra, at 769). Where an association or organization seeks standing, it must establish, among other things, that one or more of its members would have standing to sue (supra, at 775). To establish standing, a “petitioner need only show that the administrative action will in fact have a harmful effect on the petitioner and that the interest asserted is arguably within the zone of interest to be protected by the statute” (Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 9 [1975]). The only injury in fact or harmful effect which can be shown by petitioner Association herein is purely economic and speculative — prospective reduced counsel fees to be paid to some of its members qualified to serve as assigned counsel in capital cases, each of whom remains free to decline such appointments after January 1, 1999.
The expressly stated purpose of Judiciary Law § 35-b (5) (a) is that “[flee schedules shall be promulgated and approved * * * and shall be adequate to ensure that qualified attorneys are available to represent defendants [in capital cases] eligible to receive counsel pursuant to this section” (emphasis supplied). This court holds and determines that defendants in potential capital cases — not qualified attorneys eligible to be assigned in capital cases — clearly fall within the primary zone of interest to be protected by the statute. Therefore, the only way for petitioner Association and the individual petitioners to have standing is to vicariously assert the rights of defendants in capital cases to be represented by qualified attorneys, to wit: if qualified attorneys are not available to represent defendants in capital cases eligible to receive assigned counsel, those defendants’ constitutional due process rights are thereby jeopardized.
The Court of Appeals has been fairly liberal and generous in finding and granting organizational standing. In Matter of Dental Socy. v Carey (61 NY2d 330 [1984]), the Court of Appeals held that individual dentists had standing to challenge Medicaid reimbursement schedules for dental care and that the Dental Society had standing based upon dentists’ common “professional interest” in adequate dental reimbursement. Likewise, the Third Department has liberally construed the *92 zone of interest test in granting organizational standing (see, e.g., Matter of New York State Conference of Blue Cross & Blue Shield Plans v Muhl, 253 AD2d 158 [3d Dept 1999], lv denied 93 NY2d 807 [1999]; New York State Nurses Assn. v Axelrod, 152 AD2d 888 [3d Dept 1989], supra).
This court holds and determines that the petitioner Association and the individual petitioners have standing as essential participants in a hopefully unified system wherein all concerned — the courts, prosecutors, and defense counsel — are committed to the fundamental principle that qualified legal counsel must be available and provided for all indigent defendants in potential capital cases and that the rates of compensation for qualified counsel must be adequate to ensure that end (see, Community Serv. Socy. v Cuomo, 167 AD2d 168, 172 [1st Dept 1990]; see also, Matter of Dental Socy. v Carey, supra).
JURISDICTION AND VENUE
How does a Justice of the Supreme Court end up sitting in judicial review of an administrative determination made by the Judges of the Court of Appeals?
A special proceeding pursuant to CPLR article 78 constitutes the procedural device or mechanism for challenging and reviewing an administrative action or determination in the courts. A CPLR article 78 proceeding must be commenced in Supreme Court (CPLR 7804 [b]). Venue is generally in the county where the respondent made the determination complained of and/or where the principal office of the respondent is located (CPLR 506 [b]) — here, Albany County.
Parenthetically, this court notes that article 78 proceedings to review certain kinds of decisions by Supreme Court Justices and County Judges must be commenced in the Appellate Division (CPLR 506 [b] [1]) “for the obvious reason that it would be uncomfortable — to say the least — for one Supreme Court Justice to declare another’s decision so obviously erroneous as to merit extraordinary relief.” (Borchers and Markell, op. cit, § 8.19, at 293 [2d ed]). Professor Siegel has written that CPLR 506 (b) (1) “recognizes the incongruity of allowing one supreme court justice to review another’s activity.” (Siegel, NY Prac § 565, at 932-933 [3d ed].)
What about the huge incongruity of a single Supreme Court Justice reviewing a determination made by six Judges of the Court of Appeals in their administrative capacity?
With the advent of the Office of Court Administration and the simultaneous vesting of so much administrative power and *93 responsibility in the Chief Judge of the Court of Appeals and the Judges of the Court of Appeals, perhaps the Legislature might consider amending CPLR 506 to require that article 78 proceedings to review determinations of the Chief Judge and Associate Judges of the Court of Appeals in their administrative capacity likewise be commenced in the Appellate Division of Supreme Court — thereby reducing the incongruity somewhat, and spreading the “uncomfortableness” among a panel of several Justices of the Appellate Division.
Notwithstanding the foregoing observations, this Supreme Court Justice is up to the task of judicial review at hand in this particular case.
STANDARD OF JUDICIAL, REVIEW
CPLR 7803 (3) succinctly provides that the standard of judicial review of any administrative action or determination is “whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion”. The Court of Appeals has defined arbitrary action as being “without sound basis in reason and * * * without regard to the facts” (Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974]). Therefore, a rule or policy is arbitrary and capricious only if it is determined irrational by the reviewing court (New York State Assn. of Counties v Axelrod, 78 NY2d 158 [1991]).
petitioners’ contentions
The petitioners assert that the administrative review and approval of reduced fee schedules by respondent Court of Appeals was made in violation of lawful procedure, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion, and that the higher rates of compensation in the 1996 fee schedules promulgated by the screening panels and approved by the Court of Appeals should be continued.
(1) Violation of Lawful Procedure or Affected by Error of Law Contention
The petitioners contend that the Court of Appeals in issuing the December 16, 1998 order violated the express provisions of Judiciary Law § 35-b (5) (a) which grants the Court of Appeals the power and authority to approve — but not promulgate — a schedule of fees for each judicial Department.
The First Department four-member screening panel — after periodic review of the schedule of fees, in consultation with the *94 Administrative Board of the Courts — was evenly divided as to whether or not to promulgate a reduced schedule of fees as recommended by the Administrative Board of the Courts. Since two members of that screening panel recommended continuing the schedule of fees approved by the Court of Appeals in November 1996, whereas the other two members of that screening panel recommended revising and reducing the schedule of fees to those recommended by the Administrative Board and promulgated by the screening panels for the Second, Third, and Fourth Departments, petitioners argue that no revised schedule of fees was ever promulgated by the First Department screening panel. Therefore, petitioners further argue that the approval by the Court of Appeals of the reduced schedule of fees to be paid to attorneys in the First Department was made in violation of lawful procedure and is affected by an error of law.
Judiciary Law § 35-b (5) (a) expressly provides that “[e]ach screening panel shall also promulgate and periodically update, in consultation with the [Administrative Board of the Courts], a schedule of fees to be paid to attorneys pursuant to this section in each department” (emphasis supplied). By letter dated June 26, 1998, two members of the four-member First Department screening panel recommended reduction of the fees and noted that, after nearly three years of experience since the enactment of the death penalty statute, they believed that a reduced fee schedule would ensure the availability of qualified capital counsel, and recommended the rates proposed by the other three screening panels in consultation with the Administrative Board of the Courts (post-notice hourly fees of $125 for lead counsel and $100 for associate counsel, and pre-notice hourly fees of $100 for lead counsel and $75 for associate counsel). The other two First Department screening panel members submitted to the Court of Appeals a detailed statement dated September 28, 1998, maintaining that a reduction of the schedule of fees would be generally unsupportable; however, they also noted: “The hourly rates currently in effect may be excessive — or inadequate. The problem is that we just do not know, nor, we respectfully submit, does the Court now have the data required by the statute for determination of what those rates should be.” {See, exhibit 18, at 12.)
Under well-established principles of administrative law, an agency’s powers include not only those expressly conferred, but also those required by necessary implication to fulfill its statutory mandate (see, e.g., Matter of Mercy Hosp. v New York State *95 Dept. of Social Servs., 79 NY2d 197 [1992]; Matter of City of New York v State of N. Y. Commn. on Cable Tel., 47 NY2d 89 [1979]; see also, Matter of Niagara Mohawk Power Corp. v Public Serv. Commn., 69 NY2d 365, 369 [1987]; Finger Lakes Racing Assn. v New York State Racing & Wagering Bd., 45 NY2d 471, 480 [1978]).
In this case, Judiciary Law § 35-b (5) (a) constitutes a broad statutory mandate to the four departmental screening panels, in consultation with the Administrative Board of the Courts, to promulgate and periodically update a schedule of fees for attorneys appointed to represent defendants in capital cases, subject to the approval of the Court of Appeals. When two members of the First Department screening panel essentially abstained or demurred from their duty to periodically update when they noted that “the hourly rates currently in effect may be excessive — or inadequate”, this court holds and determines that the Court of Appeals acted within the broad statutory mandate to periodically update fee schedules when it approved the fee schedules recommended by two of the four members of the First Department screening panel.
The power and authority of the Court of Appeals regarding the administration of the death penalty statute cannot reasonably be construed as narrow. The Legislature clearly placed in the Court of Appeals {not the departmental screening panels) the duty to obtain public comment as to the propriety of the proposed schedule of fees — a function of administrative rule making designed to precede the formulation of the rule or regulation promulgated and approved. The Legislature clearly regarded the role of the Court of Appeals as central in the establishment of the schedule of fees for counsel in capital cases and could not have envisioned the Court of Appeals as powerless to approve a schedule of fees where a screening panel submits an evenly divided recommendation in response to its statutory duty to submit periodic updates.
Furthermore, this court holds and determines that the broad power and authority conferred and implied by Judiciary Law § 35-b (5) (a) grants to the Court of Appeals in its administrative capacity — after review of the promulgated fee schedules from the screening panels, review of rates of compensation paid in the Departments to attorneys with substantial experience in representing defendants charged with serious felonies, and after consideration of public comment — the authority to approve any reasonable schedule of fees which serves the purposes of the statute. Accordingly, this court holds and *96 determines that the December 16, 1998 order of the Court of Appeals approving a reduced schedule of fees for qualified attorneys in the First Department was not made in violation of lawful procedure or affected by an error of law.
(2) Arbitrary and Capricious, or an Abuse of Discretion Contention
The petitioners further contend that the December 16, 1998 administrative determination of the Court of Appeals was arbitrary and capricious, or an abuse of discretion because: (1) the Court of Appeals failed to review the rates of compensation generally paid within each Department to attorneys with substantial experience in representing defendants charged with murder or other serious felonies; and (2) the Court of Appeals in approving the reduced schedule of fees failed and neglected to ensure that qualified attorneys are available to represent capital defendants.
Judiciary Law § 35-b (5) (a) constitutes a legislative delegation to the departmental screening panels, to the Administrative Board of the Courts, and to the Court of Appeals, of the broad discretionary power and responsibility to formulate and implement a quasi-legislative policy and rule-making determination upon an important issue: to ensure that qualified attorneys are adequately compensated and are available to represent capital defendants eligible for assigned counsel.
The standard for judicial review of an administrative regulation is whether the regulation is arbitrary or capricious (see, Matter of Consolation Nursing Home v Commissioner of N. Y. State Dept. of Health, 85 NY2d 326, 331 [1995]). An administrative agency must be accorded great deference in its decision-making powers — especially where the agency acts within its area of expertise (see, supra, at 331; see also, New York State Assn. of Counties v Axelrod, 78 NY2d, supra, at 166). Therefore, in reviewing the Court of Appeals administrative approval of fee schedules for capital counsel, the reviewing court must grant substantial deference to and not disturb the Court of Appeals expertise in approving a schedule of fees to be paid to capital counsel, unless petitioners satisfy their heavy burden of demonstrating that the fee schedule determination was irrational (see, Matter of Consolation Nursing Home v Commissioner of N. Y. State Dept. of Health, supra, at 331-332; Matter of Medical Malpractice Ins. Assn. v Superintendent of Ins., 72 NY2d 753, 761-762 [1988]; Matter of New York Univ. Med. Ctr. v Axelrod, 188 AD2d 207, 210 [3d Dept 1993], lv denied 81 NY2d 711 [1993]).
*97 This court has thoroughly read the administrative record detailing and revealing the arduous and somewhat contentious administrative review and periodic update process undertaken by the various screening panels in each Department, in consultation with the Administrative Board of the Courts; the empirical data gathered and considered by the screening panels, in consultation with the Administrative Board of the Courts; the back and forth, give and take process between the Court of Appeals in its administrative capacity, and the four departmental screening panels; the written comments from interested parties; and the review and approval of the revised, reduced fee schedule by the Court of Appeals.
Contrary to petitioners’ contention, Judiciary Law § 35-b (5) (a) clearly does not require that fee schedules be commensurate with prevailing market rates in each Department. As the Governor explained in signing the bill into law, “the bill mandates that the compensation paid to all such attorneys— not just privately retained attorneys but also attorneys provided at public expense — be considered”, so that fee schedules “are not set at unduly high levels” (Governor’s Mem approving L 1995, ch 1, 1995 McKinney’s Session Laws of NY, at 2287). The administrative record clearly indicates that the screening panels and the Court of Appeals reviewed and considered the rates of compensation generally paid in each Department to all attorneys with substantial experience in the representation of defendants charged with serious felonies. Based upon extensive study, information gathering, and debate, the screening panels and the Court of Appeals in its administrative capacity could reasonably and rationally conclude that the reduced schedule of fees approved on December 16, 1998 will ensure that qualified attorneys are available to represent capital defendants.
This court holds and determines that petitioners have not met their burden and that the December 16, 1998 determination of the respondent Court of Appeals acting in its administrative capacity pursuant to the provisions of Judiciary Law § 35-b (5) (a) in reviewing and approving the reduced fee schedules for assigned counsel in capital cases as promulgated by the departmental screening panels was not irrational or arbitrary, or an abuse of discretion.
CONCLUSION
This court holds and determines that petitioners have not satisfied their burden of establishing that the December 16, *98 1998 order of the Judges of the Court of Appeals, acting in their administrative capacity, approving reduced capital counsel fees for the four judicial Departments was made in violation of lawful procedure, or was affected by an error of law, or was unreasonable or irrational, or an abuse of discretion. This court further holds and determines that the December 16, 1998 order of the Judges of the Court of Appeals in their administrative capacity should be and the same is hereby confirmed, and that the petition should be and the same is hereby dismissed.