In the Matter of NEW YORK UNIVERSITY MEDICAL CENTER, a Division of NEW YORK UNIVERSITY, et al., Respondents-Appellants, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Appellants-Respondents, et al., Respondent.

Third Department, February 25, 1993

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General,* Albany *(Clifford A. Royael* and *Peter G. Crary* of counsel), for David Axelrod, appellant-respondent.

*Garfunkel, Wild & Travis, P. C.,* Great Neck *(Fredrick I. Miller* and *Kevin J.F. Fitzgerald* of counsel), for New York University Medical Center and others, respondents-appellants.

*Hinman, Straub, Pigors & Manning, P. C.,* Albany *(Bartley J. Costello, III, Eileen M. Considine* and *Beverly Cohen* of counsel), for New York State Conference of Blue Cross and Blue Shield Plans, appellant-respondent.

*Proskauer, Rose, Goetz & Mendelsohn,* New York City *(Edward S. Kornreich, Charles S. Sims* and *Marina O. Lowy* of counsel), for Beth Israel Medical Center and others, appellants-respondents.

*Couch, White, Brenner, Howard & Feigenbaum,* Albany *(Harold N. Iselin* and *Christopher F. Hansen* of counsel), for New York State Health Maintenance Organization Conference, appellant-respondent.

## OPINION OF THE COURT

Mercure, J.

In 1988 the Legislature enacted Public Health Law § 2807-c

(L 1988, ch 2, § 11),[1] which substantially altered the scheme for State and third-party reimbursement to general hospitals for non-Medicare patient care. The prior methodology reimbursed hospitals based upon a per diem rate for each day of care provided without regard to the nature of the specific services rendered to an individual patient. The current methodology requires that each patient's symptoms be assigned a diagnosis-related group (hereinafter DRG), the average of which makes up the hospital's case mix. The case mix is a profile of the severity of illnesses and necessary treatment received by all patients served by an individual hospital. Hospitals are reimbursed a specific amount for each patient based upon the DRG assigned. The higher the DRG, the greater the payment to the hospital. In enacting section 2807-c, it was envisioned that there would be case mix increases based upon two factors. First, there would be real increases, attributable to increases in the care that the patients require. Second, there would be artificial increases through coding enhancements resulting from hospitals' natural (and acceptable) tendency to place patients in higher DRGs as they gained experience with the reimbursement system and improved their documentary practices.

Section 2807-c (11) (f) (i), as amended (L 1989, ch 340), therefore placed a ceiling on increases in the State-wide average case mix at 2% above the 1987 State-wide case mix for 1988, 3% for 1989 and 4% for 1990.[2] Section 2807-c (11) (f) was amended again in 1990, extending the case mix cap through the year 1993 with the addition of 1% to the cap per rate year (L 1990, ch 922, § 12). Section 2807-c (11) (f) also delegated to respondent Commissioner of Health (hereinafter respondent) the responsibility of promulgating and administering regulations to implement this methodology. The regulations, including, *inter alia,* 10 NYCRR 86-1.60, were originally promulgated effective January 1, 1988 and then later superseded by an amendment effective January 24, 1990 and a second amendment effective July 1, 1990. Of greatest interest here, the second amendment altered 10 NYCRR 86-1.60 (b) to require that any real case mix increase exceeding the statu-

---

1. All statutory references are to the Public Health Law unless otherwise indicated.

2. Initially, the Legislature chose to allow a 1% increase in the State-wide average case mix for 1988, a 2% increase for 1989 and a 3% increase for 1990.

tory ceiling would be recouped from all general hospitals, including those experiencing no case mix increase.

Petitioners commenced this combined CPLR article 78 proceeding and action for declaratory judgment seeking, *inter alia,* a declaration that 10 NYCRR 86-1.60 is void, to enjoin enforcement of the methodology and to force respondent to promulgate new regulations. A group of hospitals whose case mix had increased (hereinafter the hospital respondents), the New York State Conference of Blue Cross and Blue Shield Plans (hereinafter BCBS) and the New York State Health Maintenance Organizations Conference (hereinafter HMOC) were granted permission to intervene to oppose various of petitioners' claims which impacted directly on their respective interests. Supreme Court found that there was no rational basis for the regulation and a judgment was entered which, *inter alia,* declared 10 NYCRR 86-1.60 (b) void and directed respondent to promulgate new regulations. Respondent, BCBS, HMOC and the hospital respondents, with the exception of St. Vincent's Hospital and Medical Center of New York, appeal from so much of the judgment as declared 10 NYCRR 86-1.60 (b) null and void and directed respondent to promulgate new regulations. Petitioners cross-appeal from so much of the judgment as failed to declare that there should not be any recoupment for 1988 or 1989.

We begin our discussion by noting that a regulation must be upheld if it has a rational basis and is not unreasonable, arbitrary or capricious *(see, New York State Assn. of Counties v Axelrod,* 78 NY2d 158, 166). It is also well established that the construction given to statutes by the agency responsible for their administration may not be lightly set aside *(see, Matter of Medical Malpractice Ins. Assn. v Superintendent of Ins. of State of N. Y.,* 72 NY2d 753, 761-762, *cert denied* 490 US 1080; *Matter of Ward v Nyquist,* 43 NY2d 57, 63). "[T]he courts must normally assume that an administrative agency, particularly one dealing with a complex and technical subject such as hospital reimbursement rates, is in the best position to interpret and apply its regulations" *(Matter of Orange County Home & Infirmary v Axelrod,* 141 Misc 2d 135, 137). Accordingly, when challenging respondent's rate-setting methodology, a petitioner must make " 'a compelling showing that the calculations from which [it is] derived [are] unreasonable' " *(Matter of Society of N. Y. Hosp. v Axelrod,* 70 NY2d 467, 473, quoting *Matter of Catholic Med. Ctr. v*

*Department of Health,* 48 NY2d 967, 968). We conclude that petitioners have failed to make such a showing in this case.

Petitioners first claim that respondent's methodology is "fatally flawed" because respondent did not consider various comparability factors when measuring the case mix increase for the rate year against the 1987 statutory base rate. This claim fails for several reasons. First, respondent's calculation of the State-wide case mix increase is fully consistent with section 2807-c (11) (f), which makes clear that respondent has no authority to consider such factors. Notably absent from the statutory language is any direction to apply comparability factors to the 1987 base year in calculating the State-wide average case mix increase. To the contrary, the statute expressly provides that in calculating the State-wide case mix increase, respondent is to exclude only those case mix changes that are due to "acquired immune deficiency syndrome, epidemics or other catastrophes resulting in extraordinary hospital utilization" (Public Health Law § 2807-c [11] [f] [i]). Respondent is required to consider the comparability factor of "past trends of individual general hospitals' case mix changes" only in allocating any necessary case mix adjustment among the individual hospitals and to consider such comparability factors as "changes in hospital service delivery and referral patterns" only as bases for hospitals' appeals of their allocations *(ibid.).*

Further, respondent's interpretation of the statute is consistent with the intent of the Legislature to set a limitation on reimbursement for increases in case mix. The record and legislative history, particularly that pertaining to the 1989 amendment to section 2807-c (11) (f) to increase the percentage caps, bears out respondent's position that the comparability factors were considered in setting the statutory cap *(see,* letter from Dept of Health, July 12, 1989, Bill Jacket, L 1989, ch 340; letter from Sen. Tully, July 14, 1989, Bill Jacket, L 1989, ch 340; letter from Member of Assembly Gottfried, July 10, 1989, Bill Jacket, L 1989, ch 340). Through their analysis, petitioners seek to apply comparability factors a second time in order to whittle away or entirely eliminate the case mix cap, directly contrary to legislative intent. In clear contrast to the factual background to *New York State Assn. of Counties v Axelrod* (78 NY2d 158, *supra),* here the challenged regulation is in direct accord with the statute authorizing it.

We also conclude that there is a rational basis in the record for recouping the real case mix increase beyond the statutory limit from all hospitals. Section 2807-c (11) (f) (i) provides, "If

in any rate year the cumulative case mix increase exceeds the allowable statewide increase, rates of payment to general hospitals shall be adjusted". Significantly, the statute does not limit the adjustment to only those hospitals which exceeded the cap. In fact, section 2807-c (11) (f) (i) provides only four limitations on respondent's discretion to devise a recoupment methodology, none of which prohibit recouping the real case mix from hospitals generally: (1) the methodology must be "specific", (2) its purpose must be "to allocate the reduction among general hospitals, in order to reduce the effect of the statewide increase on rates of payment to reflect the allowable increase", (3) the methodology chosen must "take into account past trends of individual general hospitals' case mix changes", and (4) "within the aggregate allowable statewide increase in case mix", the regulation must "permit general hospitals to appeal to [respondent] their proposed allocation of a reduction in rates of payment related to increases in statewide average case mix based on such factors as changes in hospital service delivery and referral patterns". Moreover, recouping from only those hospitals which exceeded the statutory cap would deprive those hospitals which carried the most intensive patient care of capital, while providing the hospitals with less intensive care requirements with full reimbursement. Therefore, the imposition of the flat case mix adjustment with respect to real case mix increase is rational.

Similarly meritless is petitioners' argument that the July 1990 amendment to 10 NYCRR 86-1.60 (b) renders futile a general hospital's right to appeal to respondent its individual real increase in case mix as mandated by section 2807-c (11) (f) (i). The regulation proscribes no existing statutory rights and it is undisputed that respondent has received, considered and granted a variety of appeals under the regulations. Clearly, a general hospital may raise any relevant issue in support of its appeal, such as its past trends in case mix change, changes in hospital service delivery and referral patterns, provision of new services or deletion of services, and use of new technology. In any event, petitioners have neither lodged nor been denied any such appeal, thereby precluding judicial review.

In sum, respondent's methodology for calculating the Statewide case mix increase set forth in 10 NYCRR 86-1.60 (b), as amended in July 1990, is consistent with the requirements of the case mix statute and has a rational basis. There is no requirement in the statute that respondent apply comparability factors to the 1987 base year when calculating the State-

wide case mix increase. Rather, the statute provides for comparability factors to be considered in allocating the case mix adjustment among the hospitals and as bases for hospitals' appeals. Respondent's methodology for calculating the State-wide case mix increase is consistent with legislative intent to contain hospital costs and is in keeping with the legislative history of the case mix statute. Further, there is a rational basis in the record for recouping the real case mix increase beyond the statutory limit from all hospitals. Accordingly, Supreme Court erred in nullifying the regulation. Inasmuch as comparability factors are rationally excluded from respondent's methodology, petitioners have not established that respondent improperly calculated the State-wide case mix increases in 1988 and 1989.

The remaining contentions of the petition have either been abandoned *(see, First Natl. Bank v Mountain Food Enters.,* 159 AD2d 900, 901) or have been considered and found to lack merit.

MIKOLL, J. P., YESAWICH JR., CREW III and CASEY, JJ., concur.

Ordered that the judgment is reversed, on the law, without costs, petition dismissed and it is declared that 10 NYCRR 86-1.60 (b) is valid as it pertains to the case mix adjustment component of non-Medicare reimbursement rates in accordance with Public Health Law § 2807-c.