■ In the Matter of MOUNT SINAI MEDICAL CENTER et al., Appellants, v EMPIRE BLUE CROSS AND BLUE SHIELD et al., Respondents. [724 NYS2d 509] —Spain, J. Appeal from a judgment of the Supreme Court (Ceresia, Jr., J.), entered January 7, 2000 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Commissioner of Health approving ambulatory surgery reimbursement rates set by respondent Empire Blue Cross and Blue Shield.

Petitioners, 14 hospitals located in the New York City metropolitan area, commenced this proceeding challenging the reimbursement received from respondent Empire Blue Cross and Blue Shield for ambulatory surgery services, a category of outpatient services, provided by petitioners in 1996. Empire, a not-for-profit insurance corporation organized pursuant to Insurance Law article 43, reimbursed petitioners pursuant to a formula it established (hereinafter Empire's methodology) and which respondent Commissioner of Health (hereinafter the Commissioner) certified as producing rates that are reasonable and adequate (*see,* Public Health Law § 2807 [2], [3]; 10 NYCRR 86-1.2 [a] [1], [2]).

Empire's methodology calculated reimbursement rates by taking the adjusted reimbursable costs of the particular hospital during 1994 (the base year) and trending that amount forward by specified economic indices to the subject rate year

(1996). Notably, petitioners do not challenge the reasonableness of the reimbursement amounts produced by this formula. The reimbursement amounts, however, also were subject to a payment cap of 200% of the hospital's adjusted 1987 basic per diem inpatient rate trended forward for inflation. All of the rates calculated in 1996 for petitioners pursuant to Empire's methodology exceeded the payment cap and, thus, petitioners were reimbursed at capped rates and it is only those rates that are challenged in this proceeding.

Petitioners' first contention is that the Commissioner abrogated her statutory obligation under Public Health Law § 2807 by certifying Empire's methodology but not the resulting rates as required by that statute (see, Public Health Law § 2807 [2] ["Payments for hospital service and health-related service * * * shall be *at rates* approved by the commissioner" (emphasis supplied)]; § 2807 [3] [requiring the Commissioner to certify that "the proposed *rate schedules* for payments to hospitals * * * are reasonable and adequate" (emphasis supplied)]; § 2807 [7] [requiring submission of "rate schedules" for approval]). As an initial matter, respondents argue that this issue is not preserved for our review, having been raised for the first time at oral argument and not addressed by Supreme Court (see, *Hopper v Lockey*, 241 AD2d 892, 893-894). We disagree.

It has been recognized that unless the delay in presenting an argument denies the other party the opportunity to submit necessary evidentiary material in opposition (*cf., Hopper v Lockey, supra*), an issue can be preserved for appellate review by bringing it to the attention of the nisi prius court at oral argument (see, *Matter of Angelo v New York State Assn. of Learning Disabled*, 221 AD2d 832, 833; *Matter of Tomlinson v Board of Educ.*, 112 AD2d 576, 577). Here, the transcript of oral argument before Supreme Court reveals that the merits of the issue were addressed by all parties. Although respondents objected to the introduction of the issue at that juncture on the ground that they were prejudiced by the delay, they failed to submit any further arguments in opposition or documentary evidence to the court prior to the court's issuance of its decision several months later. Thus, we conclude that the issue is preserved for our review.

On the merits, however, we reject petitioners' argument that, in this context, a meaningful distinction necessarily exists between approval of a methodology which creates ascertainable rates and approval of the individual rates themselves (see, *Matter of Jewish Home & Infirmary v Commissioner of N. Y.*

*State Dept. of Health*, 84 NY2d 252, 261 n 5 [describing a rate methodology and the ultimate rates derived therefrom as "inextricably intertwined"]). Of course, to the extent that the Commissioner must review individual rates in order to ensure that the rates produced by the methodology are "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities" (Public Health Law § 2807 [3]),* such statutory obligation cannot be side-stepped by merely "giving rubber stamp approval to proposed rate schedules" (*Cortland Mem. Hosp. v Whalen*, 67 AD2d 1020, 1022).

Here, however, we conclude that petitioners have failed to meet their burden of demonstrating that the Commissioner abrogated her statutory duty by arbitrarily certifying the reimbursement rates paid to petitioners (*see, Matter of Sylcox v DeBuono*, 267 AD2d 850, 851, *lv denied* 94 NY2d 765; *Matter of Patterson SNF v Chassin*, 196 AD2d 155, 159, *appeal dismissed and lv denied* 83 NY2d 962). First, petitioners provide no persuasive authority for the proposition that the Commissioner is required to document her approval of Empire's methodology with empirical evidence. It appears that the Commissioner was well acquainted with the proposed 1996 methodology because it was identical to the formula approved in the two previous rate years. Significantly, petitioners do not challenge the manner in which the formula was applied and fail to support the contention that the Commissioner did not consider the relevant statutory factors in approving the proposed rates. Indeed, the evidence submitted by petitioners to demonstrate that the approved rates are unreasonable consists of a chart comparing the amount of reimbursement that would have been payable under Empire's methodology and the amount actually reimbursed as a result of the rate cap. Thus, petitioners have not shown any connection—or lack thereof—between their actual costs and the approved rates. Their comparison of the methodology-produced rates to the capped rates implies a concession that the methodology-produced rates are adequate and reasonable. In the absence of any proof, or even specific allegations by petitioners, that the approved rates are insufficient to cover reasonable costs, we

---

* Specifically, the statute requires the Commissioner to consider, *inter alia*, "the elements of cost, geographical differentials in the elements of cost considered, economic factors in the area in which the hospital is located, the rate of increase or decrease of the economy in the area in which the hospital is located, costs of hospitals of comparable size, and the need for incentives to improve services and institute economies."

will not disturb the Commissioner's findings (*see, Cortland Mem. Hosp. v Whalen, supra,* at 1022).

Similarly, the burden of proof was on petitioners to make " ' "a compelling showing that the [rate cap] * * * [was] unreasonable" ' " (*Matter of New York Univ. Med. Ctr. v Axelrod,* 188 AD2d 207, 210, *lv denied* 81 NY2d 711, quoting *Matter of Society of N. Y. Hosp. v Axelrod,* 70 NY2d 467, 473, quoting *Matter of Catholic Med. Ctr. v Department of Health,* 48 NY2d 967, 968). First, petitioners contend that the rate cap unreasonably limits the reimbursement rate by an unrelated cost level because it limits 1996 *outpatient* costs by 1987 *inpatient* costs. While at first blush the use of inpatient costs to establish a limit for outpatient costs does seem incongruous, upon closer examination the 1987 inpatient rate clearly is an appropriate benchmark for establishing a price cap for outpatient services. Notably, in 1987 inpatient rates were established on a per diem basis. Since 1988, pursuant to legislative changes, hospitals were reimbursed based upon the patient's condition, or "diagnostic related group" (hereinafter DRG), rather than the length of the hospital stay. Inasmuch as outpatient surgery services are surgery services which require a hospital stay of less than 24 hours—and petitioners have made no showing that outpatient costs are higher than per diem inpatient costs—a rational connection exists between outpatient rates and inpatient rates calculated on a per diem basis. By contrast, no correlation has been demonstrated between post-1987 patient-specific DRG rates and outpatient services. Thus, it was not irrational to utilize the 1987 inpatient rates, trended forward for inflation to reflect 1996 dollars, as the benchmark year for the 1996 rate cap.

Similarly, we reject petitioners' argument that the rate cap— 200% of the "adjusted" 1987 rate trended forward for inflation—should have been "adjusted" to include the enhancements for hospital inpatient rates adopted for use beginning in 1988 (*see,* Public Health Law § 2807-c [1] [e]). The term "adjusted 1987 rate" is a term of art in the industry, referring to a hospital's 1981 basic rate adjusted to account for inflation and appeals (*see, e.g., Jordan Health Corp. v Axelrod,* 67 NY2d 935, 936). As discussed, inpatient rates have been case-based rates with the amount paid per discharge (rather than per diem) since 1988. The enhancements which petitioners contend should have been included to increase the ambulatory surgery payment cap were never used to adjust the 1987 per diem rate, but are additional amounts distributed to hospitals to supplement the DRG rates for cost increases specific to the DRG

methodology for calculating reimbursement. Since a DRG rate was not used as a benchmark, the adjustments that petitioners seek to add on are irrelevant to the price cap.

Finally, we find no error in the Commissioner's comparison—in certifying the 1996 rates—of the 1996 rate methodology to methodologies employed in prior years, to rates negotiated in subsequent years or to the rate cap used for Medicaid reimbursement. As Supreme Court properly concluded, none of these factors provides conclusive evidence of the reasonableness of the 1996 rates, but each may properly be considered as some evidence of the reasonableness of the challenged rates.

Mercure, J. P., Peters, Carpinello and Rose, JJ. concur. Ordered that the judgment is affirmed, without costs.