■ In the Matter of the Arbitration between CENTRAL MUTUAL INSURANCE COMPANY, Respondent, and BEVERLY BEMISS, Appellant. [862 NYS2d 654]—

Rose, J. Appeal from an order of the Supreme Court (Hummel, J.), entered May 16, 2007 in Rensselaer County, which

granted petitioner's application pursuant to CPLR 7503 to permanently stay arbitration between the parties.

After respondent was injured in a multicar accident, she negotiated a settlement with one of the tortfeasors for the full amount of that tortfeasor's liability insurance policy. She then gave written notice of her intent to enter into this settlement to petitioner, which had issued her an insurance policy with supplementary uninsured/underinsured motorist (hereinafter SUM) coverage, but petitioner did not respond. Later, she agreed to settle with a second tortfeasor for less than that tortfeasor's policy limits without first giving any notice to, or obtaining written consent from, petitioner. Respondent ultimately signed releases for both tortfeasors that made no provision for preserving petitioner's subrogation rights. When she then made a claim for SUM benefits, petitioner disclaimed coverage based upon her failure to either obtain its consent to the settlements or take steps to preserve its subrogation rights. Respondent then demanded arbitration of her SUM claim, and petitioner commenced this CPLR article 75 proceeding to permanently stay arbitration. Supreme Court granted petitioner's application. Respondent now appeals.

Initially, we agree with respondent that the terms of the policy permitted her to settle with the first tortfeasor without preserving petitioner's subrogation rights.[1] Paragraph 10 of the policy describes when an insured may settle with a tortfeasor without jeopardizing SUM coverage and paragraph 13 indicates that the insured may not prejudice petitioner's subrogation rights except as permitted in paragraph 10.[2] The first sentence of paragraph 10 permits settlement and execution of a release with a tortfeasor for such party's available policy limits after 30 days actual written notice to petitioner, unless petitioner agrees to advance the settlement amount within that time. Here, this provision permitted settlement with the first tortfeasor because respondent gave timely written notice and petitioner did not agree to advance the settlement amount. Neither paragraph 10 nor paragraph 13 mandated preservation of petitioner's subrogation rights in those circumstances, and respondent's execution of the release with the first tortfeasor did not violate the conditions of

1. Contrary to petitioner's contention, we consider respondent's arguments to be preserved for our review as they were raised before Supreme Court by petitioner's own arguments as well as respondent's memorandum of law in opposition to petitioner's motion (*see e.g. Matter of Mount Sinai Med. Ctr. v Empire Blue Cross & Blue Shield*, 282 AD2d 965, 966 [2001], *lv denied* 96 NY2d 719 [2001]).

2. The paragraphs of petitioner's policy mirror the terms of the SUM endorsement prescribed by 11 NYCRR 60-2.3 (f).

petitioner's policy (*see e.g. Matter of Atlantic Mut. Ins. Co. v Cooper*, 247 AD2d 209, 209 [1998]; *cf. Matter of Transportation Ins. Co. [Pecoraro]*, 270 AD2d 851, 852 [2000]).

We reach a different conclusion as to respondent's argument that her settlement with the first tortfeasor for that party's policy limits relieved her of the obligation to either obtain petitioner's written consent to her settlement with the second tortfeasor or preserve petitioner's subrogation rights in the release given to that tortfeasor. While paragraph 9 of the policy makes clear that respondent was obligated to fully exhaust the policy of only one of the tortfeasors involved in her accident (*see S'Dao v National Grange Mut. Ins. Co.*, 87 NY2d 853, 854-855 [1995]), that same provision does not excuse a failure to comply with paragraph 10 upon settling with another tortfeasor. Unlike the settlement with the first tortfeasor, paragraph 10's first sentence is not applicable to respondent's settlement with the second tortfeasor because the latter was not for the full policy amount. As a result, only the last sentence of paragraph 10 applies here. That sentence provides: "An insured shall not otherwise settle with any negligent party, without our written consent, such that our [subrogation] rights would be impaired." We do not view this sentence to be limited to where a party seeks in the first instance to settle for the full available policy limits of one tortfeasor. Rather, its function is to make clear that the method described in the first sentence of paragraph 10 is the one and only way to enter a settlement with "any negligent party" which impairs petitioner's rights without its consent. There is no dispute that respondent failed to obtain petitioner's consent or reserve petitioner's subrogation rights against the second tortfeasor here.

Our reading of paragraph 10 will not have the effect of discouraging settlements by, as respondent contends, holding her hostage to petitioner's subrogation rights and forcing her to fully litigate any claims that she might have against any and all tortfeasors. That effect would occur only if the insured were required to exhaust the policies of all tortfeasors either before or after receiving SUM benefits. However, since the amendment of the applicable regulation (*see* 11 NYCRR 60-2.3 [f]) in 1993 and the Court of Appeals holding in *S'Dao v National Grange Mut. Ins. Co.* (*supra*) in 1995, it has become clear that insureds need only exhaust the policy or policies of a *single* tortfeasor (*see* Dachs and Dachs, Insurance Law, *UM/SUM Coverage: Proposed Statutory, Regulatory Amendments*, NYLJ, Sept. 13, 2005, at 3, col 1). Thus, there is no longer any requirement in the regulations or the policy language that the insured pursue

litigation or settle the claims that it might have against additional tortfeasors in order to qualify for or retain SUM benefits. While it is true that our reading of paragraph 10 precludes the insured from entering a second settlement that impairs subrogation rights without the insurer's consent, it nonetheless encourages an initial settlement with one tortfeasor and expedites the receipt of SUM benefits while protecting the insurer's subrogation rights to recoup the benefits paid from other tortfeasors. There can be little doubt that such was the intent of the applicable regulations (*see id.*).

Inasmuch as respondent did not comply with the terms of her policy, she lost her claim to SUM benefits and we find no basis to disturb Supreme Court's determination to permanently stay arbitration (*see Matter of Prudential Prop. & Cas. Ins. Co. v Ambeau*, 19 AD3d 999, 1000 [2005]; *Matter of State Farm Mut. Auto. Ins. Co. v Lucano*, 11 AD3d 548, 548 [2004], *lv denied* 5 NY3d 717 [2005]; *New York Cent. Mut. Fire Ins. Co. v Danaher*, 290 AD2d 783, 784-785 [2002]).

Mercure, J.P., Spain and Stein, JJ., concur.

Kavanagh, J. (dissenting). I do not agree with the majority's position that, prior to gaining access to supplementary uninsured/underinsured motorist (hereinafter SUM) coverage, an insured must fully exhaust the applicable policy limits of *every* tortfeasor's insurance policy who was involved in the accident or, in the alternative, once it has fully exhausted the applicable policy limits of one tortfeasor, it must obtain written permission from the SUM carrier to enter into any settlement with any other tortfeasor that is less than the policy limits. For this reason, I respectfully dissent.

When respondent stopped her vehicle as a result of a car accident that occurred in front of her, she was struck in the rear by the first tortfeasor's vehicle. The second tortfeasor's vehicle then struck the first tortfeasor's vehicle in the rear, causing it to strike respondent's vehicle a second time. As a result, respondent commenced an action against both tortfeasors for injuries she sustained as a result of the accident. In the discussions that ensued, the settlement offer received from the second tortfeasor was drastically lower than that of the first tortfeasor, reflecting the relative level of culpability of each party.

Paragraph 9 of respondent's SUM policy—entitled "Exhaustion Required"—provides that "[e]xcept as provided in [paragraph] 10, we will pay under this SUM coverage only after the limits of liability have been used up under all motor vehicle bodily injury liability insurance policies or bonds applicable at the time of the accident *in regard to any one person who may be*

*legally liable for the bodily injury sustained by [respondent]"* (emphasis added). It is conceded that when respondent settled with the first tortfeasor, she exhausted all bodily injury insurance policies with respect to that tortfeasor and, per the literal reading of this provision of her policy, she was not required to exhaust the second tortfeasor's bodily injury policies in order to make a SUM claim under her policy.

Paragraph 10 provides the manner in which respondent was able to settle with the first tortfeasor—it allowed respondent to sign a release with a tortfeasor if she provided petitioner with written notice of her intent to settle for the full available limit of the first tortfeasor's policy and if, after 30 days, petitioner choose not to advance the settlement amount to respondent and proceed against the first tortfeasor. Respondent provided such notice to petitioner and petitioner did not respond. Once this notice was provided and the requisite time period expired, respondent was within her rights under her policy with petitioner to settle for the full amount of that tortfeasor's insurance policy and provide a release to that tortfeasor for any further liability. Moreover, to gain access to the SUM policy, she was not then required, once this had occurred, to provide the SUM carrier with written notice of her intent to settle with the second tortfeasor even if for less than the policy limits.

The majority's reference to the last sentence of paragraph 10 is, in my view, misplaced. While it states that "[a]n insured shall not otherwise settle with any negligent party, without our written consent, such that our rights would be impaired," this does not apply to the second tortfeasor herein. This sentence— found in the "Release or Advance" paragraph—applies to a party seeking in the first instance to settle for the full limits of a liability policy and requires that the settlement must be done in accordance with the aforementioned provisions of paragraph 10. However, once those conditions have been met, and a settlement has been reached with respect to the full limits of one tortfeasor's policy, paragraph 10, and all of its terms, no longer applies to restrict a party's ability to settle with a second tortfeasor. Here, the exhaustion of the first tortfeasor's policy triggered respondent's SUM coverage and the settlement reached with the second tortfeasor did not render the SUM coverage unavailable (*see S'Dao v National Grange Mut. Ins. Co.*, 87 NY2d 853, 854-855 [1995]; *Matter of Liberty Mut. Ins. Co. v Doherty*, 13 AD3d 629, 630 [2004]; *see also Matter of Hertz Claim Mgt. Corp. v Kulakowich*, 53 AD3d 578, 579 [2008]).

To require otherwise would result in a circumstance where an insured who has sued multiple tortfeasors would only be al-

lowed to pursue SUM benefits after he or she had fully exhausted each tortfeasor's insurance policy—or, after fully exhausting one of the tortfeasor's policies, had obtained written permission from the SUM carrier to settle for less than the policy limits as to all of the remaining tortfeasors. Where there are multiple tortfeasors and the level of legal responsibility among the various tortfeasors is so dramatically different, it would be virtually impossible to obtain settlements that completely exhaust each applicable policy. In such a circumstance, the SUM carrier would have little or no incentive to give its consent to such a settlement. By the majority's view, the insured would be forced to fully litigate any claims it might have against less culpable tortfeasors in order to preserve its rights to SUM benefits. Such a finding is clearly at odds with that rendered in *S'Dao v National Grange Mut. Ins. Co.* (87 NY2d at 854-855). There, the plaintiff was injured in a two-car accident and reached settlements with two carriers and did not exhaust the coverage of one of the vehicles involved. The SUM coverage was found to be available even though the limits of the policies held by all of the tortfeasors had not been exhausted.*

The majority holds that, once a plaintiff has exhausted the personal injury policy limits as to any one tortfeasor, he or she may access his or her SUM policy as long as the plaintiff has not settled or in any way compromised the SUM carrier's claim against any other tortfeasor. Per such a holding, a plaintiff would have no incentive to *ever* settle for less than the policy limit with any secondary tortfeasor absent the express consent of the SUM carrier. What is left unanswered by the majority's position is the question of what happens after the SUM claim has been resolved—whether a plaintiff must maintain his or her position of no compromise against any and all tortfeasors regardless of their culpability in order to ensure that he or she has not in any way compromised the award that it has already received from the SUM carrier. This position, in my view, is dramatically at odds with the longstanding goal of creating an environment that is designed to result in responsible settlements of this type of litigation.

The effect that this has is to discourage settlements in this

---

* While this matter was litigated prior to the promulgation of Regulation 35-D (see 11 NYCRR 60-2.0 *et seq.*), the Court of Appeals, by footnote, took "note that [R]egulation 60-2.3 (e) (prescribed Supplementary Uninsured Motorists Endorsement, Conditions para [9]) provides that the condition precedent to payment is satisfied when the limits of liability 'in regard to any one person who may be legally liable for the bodily injury sustained by the insured' . . . are exhausted" (*S'Dao v National Grange Mut. Ins. Co.*, 87 NY2d at 854 n).

type of litigation and to invite—indeed command—a plaintiff's counsel to fully litigate any and all personal injury claims that it might have against any and all tortfeasors. Clearly, this is not the result that was intended by the Legislature when it enacted these provisions and, in my view, it constitutes a waste of precious judicial resources.

Moreover, such a result is clearly at odds with the overriding purpose of SUM coverage, which, as stated in the instant SUM policy, is to provide compensatory damages that an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle that, as a result of his or her negligence, has caused the insured bodily injury. Here, the party primarily responsible for respondent's injuries was underinsured. SUM coverage is specifically designed to address such a circumstance and to provide an injured party with access to coverage that will insure that he or she is properly compensated for the injuries that he or she sustained as a result of such other party's negligence. The purpose of such coverage would clearly be frustrated when, as a practical matter, access to a SUM policy could only be obtained when the policy limits of each and every tortfeasor involved in the accident has been fully exhausted. In addition, such a result is inherently inconsistent with the purpose of the settlement mechanism erected within the release and advance provisions of the SUM policy.

Moreover, the majority's position is, in my view, contrary to the stated purpose of Regulation 35-D (*see* 11 NYCRR 60-2.0 *et seq.*). Regulation 35-D was promulgated in response to preregulation SUM endorsements that provided for "different methods of claim settlement and arbitration" that would "create confusion in the process and, as a result, *diminish the utility of SUM coverage*" (11 NYCRR 60-2.0 [b] [emphasis added]). The regulation was enacted to establish "a standard form for SUM coverage, in order to eliminate ambiguity, minimize confusion and *maximize its utility*" (11 NYCRR 60-2.0 [c] [emphasis added]). If the majority's view accurately states the law of this state, it is difficult to imagine how, in situations involving multiple tortfeasors, SUM benefits could ever be effectively obtained and, as a result, such a view fails to comport with the regulation's stated purpose.

Finally, respondent should not, in my view, be penalized because she had the misfortune to be involved in an accident that involved more than one wrongdoer. Had she only brought suit against the primary tortfeasor and settled against him under precisely the same circumstances while forgoing her right to sue others that were involved in this accident, respondent

would clearly have been entitled to make this claim under her SUM policy. As a result, I would reverse and deny petitioner's application to stay arbitration.

Ordered that the order is affirmed, without costs.