12 N.Y.3d 648 (2009)
In the Matter of the Arbitration between CENTRAL MUTUAL INSURANCE COMPANY, Respondent, and
BEVERLY BEMISS, Appellant.
Court of Appeals of New York.
Argued June 3, 2009.
Decided June 25, 2009.
*649 Powers & Santola, LLP, Albany (Michael J. Hutter of counsel), and Capasso & Massaroni, LLP, Schenectady, for appellant.
*650 Goldberg Segalla LLP, Albany (Jonathan M. Bernstein of counsel), for respondent.
Fiedelman & McGaw, Jericho (Andrew Zajac, Dawn C. DeSimone, Rona L. Platt, Brendan T. Fitzpatrick and David B. Hamm of counsel), and Thomas J. Maroney for Defense Association of New York, Inc., amicus curiae.
Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

*651 OPINION OF THE COURT
READ, J.
We are asked in this appeal whether consent-to-settle and subrogation-protection provisions in the supplementary uninsured/underinsured motorists (SUM) endorsement in an automobile liability insurance policy fall by the wayside once an insured has exhausted the available policy limits of a single tortfeasor in a multi-tortfeasor accident. We hold that these provisions remain in force and govern any settlements that the insured may subsequently make with other tortfeasors.

I.
During the morning rush hour on April 12, 2005, a chain-reaction automobile accident unspooled in the westbound lane of Interstate 90 in the City of Albany when the first car in the ensuing five-vehicle pileup stopped in traffic to avoid becoming entangled in a two-car collision. The vehicle driven by Beverly Bemiss (the third in line in the pileup) was struck twice in the rearonce by the vehicle driven by Kati Kowalczyk, the fourth in line; and again when the automobile driven by John Genski, the fifth in line, rear-ended Kowalczyk's vehicle, pushing it into the back of Bemiss's vehicle a second time. As a consequence of this accident, Bemiss seriously injured her right foot and ankle, which required surgery to repair the Achilles tendon.
Kowalczyk was insured for motor vehicle liability under a policy issued by Government Employees Insurance Company (GEICO), with bodily injury liability limits of $25,000; Genski was insured under a policy issued by Progressive Northeastern *652 Insurance Company, also with bodily injury liability limits of $25,000. Central Mutual Insurance Company was Bemiss's automobile liability insurance carrier. Her single limit policy provided $100,000 per accident for bodily injury and property damage, and a SUM endorsement for $100,000 per accident. The provisions in her SUM endorsement were prescribed by the New York State Department of Insurance (the Department) in Regulation 35-D (11 NYCRR subpart 60-2). And since both Kowalczyk's and Genski's bodily injury liability limits were less than Bemiss's, her SUM coverage was activated or triggered as to each of them (see Matter of Prudential Prop. & Cas. Co. v Szeli, 83 NY2d 681, 685 n 1, 686-688 [1994]). SUM benefits are not payable, however, until the available policy limits of a single tortfeasor have been exhausted by payment or settlement (see S'Dao v National Grange Mut. Ins. Co., 87 NY2d 853, 854-855 [1995]).
By letter dated July 27, 2006, Bemiss's attorney informed Central that GEICO, Kowalczyk's insurance carrier, had tendered the policy limits of $25,000. He further advised that Bemiss intended to accept this offer and execute a release on or after August 27, 2006 unless Central advanced this amount to her in return for her cooperation in any lawsuit on her behalf. Central did not respond to the letter. Bemiss also at some point agreed to settle with Genski and his insurer, Progressive, for $2,500i.e., less than the $25,000 policy limit. Bemiss never notified Central that she intended to settle with Genski, or solicited Central's consent.
On December 21, 2006, Bemiss executed a single general release in favor of Kowalczyk, GEICO, Genski, and Progressive in consideration of the sum of $27,500-$25,000 from GEICO and $2,500 from Progressive. The release did not preserve Central's subrogation rights with respect to any payment that might be made to Bemiss under her SUM coverage. Earlier in December (and therefore before exhausting Kowalczyk's policy), Bemiss served Central with a request for arbitration, seeking $72,500 in SUM benefits.
On January 9, 2007, Central's attorney wrote to Bemiss's attorney to ask whether an action had been filed against Genski. On January 17, 2007, Bemiss's attorney replied that his client had settled with Genski and his insurance carrier for $2,500, and that Bemiss was seeking $72,500 from Central under the SUM endorsement.
*653 By letter dated January 26, 2007, Central disclaimed liability to Bemiss and denied coverage. Specifically referencing Condition 10 (without waiving any other ground that it might have for disclaimer), Central told Bemiss that she had violated policy conditions by "settl[ing] with both responsible parties [i.e., Kowalczyk and Genski] in this loss, and in signing the release, waived [Central's] subrogation rights." Condition 10 allows an insured to collect under SUM coverage in a multiple-tortfeasor accident before exhaustion by settlement or judgment. Specifically, 30 days after having given the insurer notice of a tortfeasor's offer to settle for the maximum available policy limits, the insured may execute a general release with the tortfeasor and retain SUM eligibility unless, in the meantime, the insurer has agreed to advance the settlement amount in exchange for the insured's cooperation with its subrogation claim.
In March 2007, Bemiss served Central with another request for arbitration, having withdrawn the December notice after arbitration was temporarily stayed at Central's behest. She again sought $72,500 in SUM benefits. And Central again successfully moved by order to show cause, entered on March 26, 2007, to stay arbitration temporarily pending disposition of its application for an order permanently staying arbitration and vacating Bemiss's notice.
Central maintained that Bemiss was not entitled to SUM benefits because she did not protect its subrogation rights, give prior written notice of her intent to settle, or obtain its written consent before settling with Genski/Progressive. In opposition, Bemiss argued that
"[t]he policy . . . reads that when there are multiple tortfeasors, and one of those tortfeasors offers the maximum coverage under its policy, then written notice must be given of the policy tender before execution of a release. The policy [does not contain] any language that requires the insured to provide written notice for a partial tender from a second tortfeasor."
In May 2007, Supreme Court granted Central's application and permanently stayed arbitration, reasoning that, under the terms of the SUM endorsement, Central "expressly require[d] that it retain the right to subrogate regardless of the exact nature of the settlement." Thus, "[e]ven if the Court were to accept [Bemiss's] argument that once [she] settled for the entire *654 amount of coverage with [GEICO], [she] could settle with Progressive without notice and consent of [Central], this argument does nothing to remedy the fact that [Bemiss] failed to preserve Central's right to subrogate." Bemiss appealed.
The Appellate Division, with one Justice dissenting, affirmed. As an initial matterand contrary to Supreme Court's assessment both the majority and the dissenting Justice concluded that Condition 10 in the SUM endorsement "permitted [Bemiss] to settle with the first tortfeasor [Kowalczyk] without preserving [Central's] subrogation rights" with respect to Kowalczyk (Matter of Central Mut. Ins. Co. [Bemiss], 54 AD3d 499, 500 [3d Dept 2008]). The majority, however, rejected Bemiss's additional claim that once she qualified for SUM payments by exhausting Kowalczyk's policy, she was free to settle with Genski without obtaining Central's prior written consent or safeguarding its subrogation rights. The dissent disagreed, and we granted Bemiss permission to appeal (11 NY3d 711 [2008]). We now affirm.

II.
To decide this appeal, we must examine the interplay of the consent-to-settle (Condition 10), exhaustion (Condition 9), and subrogation-protection (Condition 13) provisions in the standard SUM endorsement prescribed by Regulation 35-D, which the Department designed to "reduce confusion regarding [SUM] coverage, make it easier to collect benefits and, when disputes arise, make it simpler to resolve those disputes" (NY Reg, Apr. 22, 1992, at 21). To put these provisions in perspective, a bit of history is in order.
Insurance Law § 3420 (f) (2) (A) provides that "[a]s a condition precedent to the obligation of the insurer to pay under the [SUM] insurance coverage, the limits of liability of all bodily injury liability bonds or insurance policies applicable at the time of the accident shall be exhausted by payment of judgments or settlements." And in S'Dao, we concluded that "the exhaustion requirement of section 3420 (f) (2) relates back to the statute's reference to `another motor vehicle' and indicates that the proper focus is on the underinsured status of each individual tortfeasor" (87 NY2d at 854). As a result, SUM benefits are payable in a multiple-tortfeasor accident once the insured exhausts the bodily injury liability limits applicable to any single tortfeasor. Our decision in S'Dao reversed the Appellate Division, which had interpreted the statute to require a SUM *655 claimant to exhaust the bodily injury liability limits of the policies held by all tortfeasorsi.e., to exhaust the aggregate limits of liability of all applicable policies. Further, in Weinberg v Transamerica Ins. Co. (62 NY2d 379, 381-382 [1984]), we held that in settling personal injury claims arising out of a motor vehicle accident,
"an insured will be held to have prejudiced the subrogation rights of his insurer unless he establishes by express provision in the release . . . or by necessary implication arising from the circumstances of the execution of the release that the settling parties reserved the rights of the insurer against the third-party tortfeasor or otherwise limited the extent of their settlement to achieve that result."
As a corollary, an insured who settles with a tortfeasor without his carrier's written consent forfeits SUM benefits (see State Farm Mut. Auto. Ins. Co. v Taglianetti, 122 AD2d 40 [2d Dept 1986]).
These principles created what commentators referred to as a "Catch-22" for the SUM claimant (see e.g. Dachs and Dachs, Insurance and No-Fault Law, The Underinsured Motorist, NYLJ, Dec. 11, 1990, at 3, col 1). That is, if the insured's carrier withheld its consent to an offer of a tortfeasor's full available policy limits in exchange for a general release (which was naturally always demanded), the insured faced unpalatable options: either refuse the offer and litigate the case to judgment in order to exhaust the tortfeasor's policy and become eligible to receive SUM benefits, or accept the offer and risk losing SUM coverage on account of having prejudiced the carrier's subrogation rights. The Department set out to eliminate this dilemma when it formulated Regulation 35-D.
To this end, Regulation 35-D, as initially drafted by the Department, mandated the following in the standard SUM endorsement as Conditions 7 and 8:
"7. Exhaustion Required: Except as provided in Condition 8, we will pay under this SUM coverage only after the limits of liability have been used up under all motor vehicle bodily injury liability insurance policies or bonds applicable at the time of the accident in regard to a person that may be legally liable for the bodily injury sustained by the insured.

*656 "8. Release or Advance: In accidents involving the insured and one or more negligent parties, if such insured settles with all such parties for the aggregate limits of the liability coverage of such parties, release may be executed with such parties after thirty calendar days actual written notice to us, unless within this time period we agree to advance such settlement amounts to the insured in return for the cooperation of the insured in our lawsuit on behalf of the insured.
"We shall have a right to the proceeds of any such lawsuit equal to the amount advanced to the insured and any additional amounts paid under this SUM coverage. Any excess above those amounts shall be paid to the insured.
"An insured shall not otherwise settle with any negligent party, without our written consent, such that our rights would be impaired" (see Dachs and Dachs, The Undersinsured Motorist, NYLJ, Dec. 11, 1990, at 3, col 1 [discussing development of Department's proposed Regulation 35-D]; Dachs and Dachs, Insurance and No-Fault Law, SUM Regulation Redux, NYLJ, June 9, 1992, at 3, col 1 [comparing text of proposed and final Regulation 35-D]).
Notice of proposed Regulation 35-D was published in the State Register on September 11, 1991.
In response to comments and criticism, Regulation 35-D was subsequently amended and another notice was published in the State Register on April 22, 1992.[*] In the amended version, Conditions 7 and 8 of Regulation 35-D were renumbered Conditions 9 and 10, and provided respectively as follows:
"9. Exhaustion Required: Except as provided in Condition 10, we will pay under this SUM coverage only after the limits of liability have been used up under all motor vehicle bodily injury liability *657 insurance policies or bonds applicable at the time of the accident in regard to any one person who may be legally liable for the bodily injury sustained by the insured.
"10. Release or Advance: In accidents involving the insured and one or more negligent parties, if such insured settles with any such party for the available limit of the motor vehicle bodily injury liability coverage of such party, release may be executed with such party after thirty calendar days actual written notice to us, unless within this time period we agree to advance such settlement amounts to the insured in return for the cooperation of the insured in our lawsuit on behalf of the insured.
"We shall have a right to the proceeds of any such lawsuit equal to the amount advanced to the insured and any additional amounts paid under this SUM coverage. Any excess above those amounts shall be paid to the insured.
"An insured shall not otherwise settle with any negligent party, without our written consent, such that our rights would be impaired" (11 NYCRR 60-2.3 [f]).
By changing the reference in Condition 9 (former proposed Condition 7) from "a person that" to "any one person who," eliminating the reference in Condition 10 (former proposed Condition 8) to "aggregate limits" and substituting the singular "party" for the plural "parties," the Department unambiguously applied the exhaustion requirement in section 3420 (f) to any single tortfeasor, not to all potential tortfeasors. This is exactly how we subsequently interpreted the statute in S'Dao.
Urging us to read Conditions 9 and 10 together, Bemiss contends that "where multiple tortfeasors are involved and the insured has permissibly settled with one tortfeasor for his/her policy limits, . . . the insure[r] has no right under Regulation 35-D to be notified of and withhold consent to a settlement with another tortfeasor for less than his/her policy limit" even though Condition 10 mandates that "[a]n insured shall not otherwise settle with any negligent party, without our written consent, such that our rights would be impaired." In her view, this restriction "is intended to apply to an insured seeking . . . to settle for the policy limits of [the first] tortfeasor . . . The *658 goal is to allow the settlement to be consummated while giving the insurer the opportunity to protect its subrogation right" i.e., to remedy the "Catch-22." Bemiss argues that to read Condition 10 as governing an insured's settlement with a second tortfeasor would "take away" what Condition 9 and our decision in S'Dao givei.e., the rule that SUM benefits become payable in a multiple-tortfeasor accident after one tortfeasor's policy has been exhausted.
As already noted, an insured generally may not settle with a tortfeasor without the SUM insurer's written consent, and may not prejudice the SUM insurer's subrogation rights. As to the latter point, Condition 13 of the SUM endorsement specifically states as follows:
"13. Subrogation: If we make a payment under this SUM coverage, we have the right to recover the amount of this payment from any person legally responsible for the bodily injury or loss of the person to whom, or for whose benefit, such payment was made to the extent of the payment. The insured or any person acting on behalf of the insured must do whatever is necessary to transfer this right of recovery to us. Except as permitted by Condition 10, such person shall do nothing to prejudice this right" (11 NYCRR 60-2.3 [f] [emphasis added]).
The final sentence of Condition 10the crux of Bemiss's argument specifies that the insured "shall not otherwise settle with any negligent party, without [the SUM carrier's] written consent, such that [the SUM carrier's] rights would be impaired" (emphasis added). Looking at both this language and the structure of Condition 10, "otherwise" refers back to the settlement scenario delineated in the first sentencei.e., an insured's 30 days' written notice to the insurer of a tortfeasor's offer to settle for the maximum available policy limits. And while Bemiss contends that "any negligent party" refers only to the first tortfeasor whose policy is exhausted so as to make SUM benefits payable, this is not readily apparent from the words used or the regulatory history. In the original version of Condition 10 (former Condition 8), "any negligent party" clearly referred to all the tortfeasors in a multiple-tortfeasor accident. When the Department revised the SUM endorsement to make the exhaustion requirement applicable to any single tortfeasor rather than the aggregate limits of the liability coverage of all tortfeasors, it retained in new Condition 10 the stipulation that *659 the insured could not "otherwise settle with any negligent party" (emphasis added). Bemiss, in effect, asks us to read this provision to mean "otherwise settle with the first party to tender the available limit of his/her motor vehicle bodily injury liability coverage." Even if Bemiss's interpretation of "any negligent party" were correct, there is nothing in the SUM endorsement to suggest that the subrogation-protection provisions in Condition 13 become inoperative once an insured has exhausted a single tortfeasor's policy limits in a multiple-tortfeasor accident.
In short, Condition 10 delineates the sole situation in which an insured may settle with any tortfeasor in exchange for a general release, thus prejudicing the insurer's subrogation rights, without the carrier's written consent. Here, Bemiss violated Condition 10 when she settled with Genski for less than the maximum available policy limits without Central's written consent, such that its subrogation rights were impaired. Moreover, this result is not inconsistent with our decision in S'Dao or Condition 9 of the SUM endorsement. In this case, Bemiss settled with Kowalczyk in compliance with Condition 10, thereby also fulfilling the exhaustion requirement in Condition 9. At that point, she was entitled to make a claim for $75,000 under her SUM coverage and, if Central disagreed, to proceed to arbitration. That is, she did not have to pursue a claim against Genski in order to become eligible to collect up to the remaining limits of her SUM policy. But once having chosen to resolve her claim against Genski, she was not free under the SUM endorsement to compromise Central's subrogation rights unilaterally.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Order affirmed, with costs.
NOTES
[*] Trade associations and insurers brought a CPLR article 78 proceeding to challenge Regulation 35-D, which resulted in a stay of enforcement and a delay in implementation (see Matter of National Assn. of Ind. Insurers v Curiale, 190 AD2d 597 [1st Dept 1993], lv denied 81 NY2d 711 [1993]; see also Dachs and Dachs, Insurance and No-Fault Law, The Latest on Regulation 35-D, NYLJ, Nov. 10, 1992, at 3, col 1; Dachs and Dachs, Insurance and NoFault Law, Regulation 35-D: A Reality at Last, NYLJ, Sept. 14, 1993, at 3, col 1).