In the Matter of DESTINY USA DEVELOPMENT, LLC, et al., Respondents, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Appellants. [879 NYS2d 865]—

Appeal from a judgment (denominated order) of the Supreme Court, Onondaga County (John C. Cherundolo, A.J.), entered June 10, 2008 in a proceeding pursuant to CPLR article 78. The judgment granted the petition.

It is hereby ordered that the judgment so appealed from is unanimously modified on the law by vacating that part of the third decretal paragraph declaring null and void the "guidance" and "guide factors" issued pursuant to ECL 3-0301 (2) (z) and by vacating the fourth decretal paragraph and as modified the judgment is affirmed without costs.

Memorandum: Petitioners commenced this CPLR article 78 proceeding seeking, inter alia, to annul that part of the determination of respondent New York State Department of Environmental Conservation (DEC) denying the application of petitioner Destiny USA Development, LLC (Destiny) for inclusion of certain parcels of property in the Brownfield Cleanup Program ([BCP]; *see generally* ECL art 27, tit 14). The DEC and its Commissioner appeal from a judgment that, inter alia, annulled the determination of the DEC, "declared" that its promulgated "guidance" and "guide factors" were null and void and that its refusal to include the parcels in the BCP violated the equal protection clauses of the state and federal constitutions, and ordered the DEC to include the "entire project site of DestiNY USA, including all of the 'Carousel Parcels' and all of the 'Oil City Parcels' in the BCP" (*Destiny USA Dev., LLC v New York State Dept. of Envtl. Conservation*, 19 Misc 3d 1144[A], 2008 NY Slip Op 51161[U], *36 [2008]). We note at the outset that, because this is properly a CPLR article 78 proceeding, Supreme Court erred in making a declaration (*see generally Matter of Barker Cent. School Dist. v Niagara County Indus. Dev. Agency*, 62 AD3d 1239 [2009]).

Contrary to the contention of respondents (hereafter, DEC),

the court properly granted the petition. Destiny applied to have 17 parcels located in a formerly industrial area of the Syracuse waterfront admitted into the BCP as a part of its development of an international resort and tourism destination known as DestiNY USA (hereafter, Project). The DEC admitted only six of those parcels into the BCP. Two of the rejected parcels are occupied by the already existent Carousel Center (Carousel parcels), which Destiny intends to redevelop as part of the Project. Located on a third rejected parcel, known as the Clark Containment Cell (Clark parcel), is an engineered containment structure containing hazardous waste soils. The remaining eight rejected parcels are in that part of Syracuse referred to as "Oil City," by virtue of the former petroleum bulk storage and industrial use of that parcel. Oil City has an established history of contamination.

We note at the outset the well-established principle that, "where . . . the judgment of the agency involves factual evaluations in the area of the agency's expertise and is supported by the record, such judgment must be accorded great weight and judicial deference" (*Flacke v Onondaga Landfill Sys.*, 69 NY2d 355, 363 [1987]; *see Matter of Lighthouse Pointe Prop. Assoc. LLC v New York State Dept. of Envtl. Conservation*, 61 AD3d 88, 93 [2009]). "Where, however, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight" (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]). Indeed, agency determinations that conflict with the clear wording of a statute are entitled to little or no weight (*see Matter of Raritan Dev. Corp. v Silva*, 91 NY2d 98, 103 [1997]; *Kurcsics*, 49 NY2d at 459).

The DEC acknowledged that there was contamination at each of the rejected parcels, but it nevertheless determined that those parcels failed to meet the definition of a brownfield site and thus were ineligible for participation in the BCP. The term brownfield site, "with certain exceptions not relevant herein, is defined as 'any real property, the redevelopment or reuse of which may be complicated by the presence or potential presence of a contaminant' " (*Lighthouse Pointe Prop. Assoc. LLC*, 61 AD3d at 90, quoting ECL 27-1405 [2]). The record establishes that the determination of the DEC with respect to those parcels was based upon its own interpretation of the relevant BCP statutes as well as the application of its own internal "guidance" and "guide factors," rather than on a factual determina-

tion within the expertise of the DEC. We thus conclude that the determination of the DEC with respect to those parcels is not entitled to our deference (*see Flacke*, 69 NY2d at 363; *Kurcsics*, 49 NY2d at 459; *cf. Lighthouse Pointe Prop. Assoc. LLC*, 61 AD3d at 93-94).

Contrary to the further contention of the DEC, the court properly determined that its refusal to include in the BCP the portion of the Carousel parcels outside of the existing mall structure was arbitrary and capricious. "[A]n agency, by law, is not allowed to 'legislate' by adding 'guidance requirements' not expressly authorized by statute" (*Matter of HLP Props. LLC v New York State Dept. of Envtl. Conservation*, 21 Misc 3d 658, 669 [2008]; *see Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 866 [2003]). As noted, the term brownfield site is defined in ECL 27-1405 (2) as "any real property, the *redevelopment or reuse* of which *may be complicated* by the presence or potential presence of a contaminant" (emphasis added). The DEC did not address in its determination any of the specified complications to redevelopment that Destiny asserted would result from contaminants in the subject parcels. Instead, the DEC relied upon its self-promulgated "guidance" and "guide factors" that require, inter alia, consideration of whether a parcel is "idled, abandoned or underutilized" and a comparison of the estimated remediation cost "to the anticipated value of the proposed site as redeveloped or reused." Those factors effectively limit inclusion in the BCP to parcels of real property that, but for BCP participation, would remain undeveloped. We conclude that the application of such a categorical limitation without a fact-specific analysis contravenes the broadly worded definition of brownfield site set forth in ECL 27-1405 (2), which requires that redevelopment only potentially be "complicated" by the presence of contamination (*see HLP Props., LLC*, 21 Misc 3d at 668-670). Similarly, the DEC's reliance on the comparative cost of remediation to the total project cost was unwarranted, inasmuch as the Legislature has addressed that issue in Tax Law sections that are applied after the completion of remediation, not before acceptance into the BCP (*see* Tax Law §§ 21-23; *HLP Props., LLC*, 21 Misc 3d at 671). Thus, the categorical application by the DEC of its "guidance" and "guide factors" as a precondition to admission into the BCP both conflicts with the intent of the Legislature and constitutes an impermissible attempt to legislate (*see HLP Props., LLC*, 21 Misc 3d at 668-670; *see also Matter of East Riv. Realty Co., LLC v New York State Dept. of Envtl. Conservation*, 22 Misc 3d 404, 422 [2008]; *see generally Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 57 NY2d 588, 594 [1982]).

Although we conclude that the categorical application by the DEC of certain "guidance" and "guide factors" as preconditions to admission into the BCP has rendered its determination arbitrary and capricious, we nevertheless agree with the DEC that the court erred in "declaring" those factors null and void. "[B]y their own terms [the 'guidance' and 'guide factors'] are explanatory and advisory, to be followed 'under appropriate conditions' " (*Matter of Sheehan v Ambach*, 136 AD2d 25, 29 [1988], *lv denied* 72 NY2d 804 [1988]), and thus they are appropriate inasmuch as they facially "do not represent 'a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers' " (*id.* at 29, quoting *Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health*, 66 NY2d 948, 951 [1985]). We therefore modify the judgment accordingly.

We reject the DEC's contention that the issue of the inclusion of the Carousel parcels in the BCP is moot inasmuch as Destiny has commenced redevelopment and remediation with respect to those parcels. A 2005 Stipulation Agreement between the DEC and Destiny (Stipulation) not only ensures that any remediation activities undertaken by Destiny are in compliance with the BCP standards, but it also expressly provides that "[n]either entering into the Stipulation *nor implementation of any work* pursuant to the Stipulation will adversely affect DestiNY's (or an affiliate's) eligibility or the eligibility of the Site as a brownfield site pursuant to the BCP" (*cf. 377 Greenwich LLC v New York State Dept. of Envtl. Conservation*, 14 Misc 3d 417, 425-426 [2006]; *see generally* ECL 27-1409).

Contrary to the DEC's further contention, the eight parcels located in the "Oil City" area of the project site were not subject to statutory exclusions. We note that the DEC set forth in its determination that those parcels were ineligible for BCP participation because they were "subject to . . . on-going state or federal enforcement action related to the contamination which is at or emanating from the site subject to the present application" (ECL 27-1405 [2] [e]), and that the DEC has since abandoned any reliance on paragraph (e) of that statutory subdivision.

In opposition to the petition, however, the DEC also relied upon a different paragraph of that statutory subdivision, i.e., ECL 27-1405 (2) (d), in support of its contention that the eight parcels located in the "Oil City" area of the project site are subject to statutory exclusions. We conclude that the DEC's reliance thereon is misplaced. Pursuant to paragraph (d) of ECL

27-1405 (2), property "subject to an order for cleanup pursuant to article twelve of the navigation law or pursuant to title ten of article seventeen of this chapter [are excluded from the definition of a brownfield site,] except such property shall not be deemed ineligible if it is subject to a stipulation agreement." Here, the record establishes that the DEC had previously entered into what were denominated Orders on Consent with several petroleum companies with respect to the eight Oil City parcels, and the DEC conceded at oral argument before Supreme Court that two of those parcels were no longer subject to the Orders on Consent. Even assuming, arguendo, that the Orders on Consent with respect to the remaining six parcels were "order[s] for cleanup" within the meaning of ECL 27-1405 (2) (d), we conclude that those parcels were included in the Stipulation, which by its own terms is a "stipulation agreement within the meaning of" ECL 27-1405 (2) (d). Thus, the Orders on Consent were superseded by the Stipulation. Further, in the cover letter to the Stipulation, the DEC expressly stated that the Stipulation would "govern the remediation of the Site during its term" and would not "adversely affect DestiNY's (or an affiliate's) eligibility or the eligibility of the Site as a brownfield site pursuant to the BCP."

We further reject the DEC's contention that the Clark parcel was "subject to . . . on-going state or federal environmental enforcement action related to the contamination," and thus that it was properly excluded under ECL 27-1405 (2) (e). The Clark parcel was subject to voluntary remediation agreements in the form of two "Agreements and Determinations" between the DEC and Destiny's predecessor in interest. Contrary to the DEC's contention, those voluntary agreements are not "enforcement actions" within the meaning of the BCP but, rather, they serve to obviate the need for the DEC to achieve remediation goals through litigation. Indeed, the two agreements expressly reserve to the DEC the right to commence an action if necessary.

We agree with the DEC, however, that the court erred in "declaring" that its determination was null and void on constitutional grounds inasmuch as we agree with the court that the DEC's determination was arbitrary and capricious, apart from any constitutional issues. "It is fundamental that a court should not decide a constitutional issue except where it is unavoidable, and should not decide a case on constitutional grounds where the decision may be based on alternative, nonconstitutional grounds" (*Ajay Glass & Mirror Co. v County of Erie*, 155 AD2d 988, 988-989 [1989]; *see Rescue Army v Mu-*

*nicipal Court of Los Angeles*, 331 US 549, 569 [1947]; *see also Matter of Vogel v Blackwell*, 225 AD2d 1091, 1092 [1996]). We therefore further modify the judgment accordingly.

Finally, we reject the contention of the DEC that the court erred in directing it to grant the application in its entirety. A judgment in a CPLR article 78 proceeding may "annul or confirm the determination in whole or in part, or modify it, and may direct or prohibit specified action by the respondent" (CPLR 7806), and the record here was sufficiently developed for the court to direct the DEC as it did (*see Matter of Pantelidis v New York City Bd. of Stds. & Appeals*, 10 NY3d 846 [2008]). Present—Hurlbutt, J.P., Martoche, Centra, Pine and Gorski, JJ. [*See* 19 Misc 3d 1144(A), 2008 NY Slip Op 51161(U).]