Matter of Wythe Berry, LLC v New York State Dept. of Envtl. Conservation (2020 NY Slip Op 07076)





Matter of Wythe Berry, LLC v New York State Dept. of Envtl. Conservation


2020 NY Slip Op 07076


Decided on November 25, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 25, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
JEFFREY A. COHEN
ROBERT J. MILLER
ANGELA G. IANNACCI, JJ.


2015-12201
 (Index No. 505803/14)

[*1]In the Matter of Wythe Berry, LLC, appellant,
v
New York State Department of Environmental Conservation, et al., respondents.


Freeborn & Peters, LLP, New York, NY (Jon Schuyler Brooks of counsel), for appellant.
Letitia James, Attorney General, New York, NY (Steven C. Wu and Scott A. Eisman of counsel), for respondents.



DECISION & ORDER
In a hybrid proceeding pursuant to CPLR article 78 to review a determination of the respondent/defendant New York State Department of Environmental Conservation dated February 19, 2014, denying the application of the petitioner/plaintiff to participate in the Brownfield Cleanup Program (ECL art 27, tit 14), and action for declaratory relief, the petitioner/plaintiff appeals from a judgment of the Supreme Court, Kings County (Wavny Toussaint, J.), dated October 16, 2015. The judgment denied the petition and dismissed the hybrid proceeding and action.
ORDERED that the judgment is modified, on the law, by deleting the provisions thereof denying that branch of the petition/complaint which was to annul the determination of the respondent/defendant New York State Department of Conservation dated February 19, 2014, denying the application of the petitioner/plaintiff to participate in the Brownfield Cleanup Program (ECL art 27, tit 14), and dismissing that portion of the proceeding/action, and substituting therefor a provision granting that branch of the petition/complaint to the extent of annulling that determination; as so modified, the judgment is affirmed, with costs to the petitioner/plaintiff, and the matter is remitted to the Supreme Court, Kings County, for further proceedings in accordance herewith.
This appeal involves two parcels of real property located in Brooklyn (hereinafter the site). Between 1903 and 1965, the Site was part of a larger parcel of property that was owned and operated by Brooklyn Union Gas Company (hereinafter BUG) as a "manufactured gas plant" (hereinafter MGP). Following a merger, BUG became known as "KeySpan Energy Delivery New York" and "KeySpan Gas East Corporation d/b/a KeySpan Energy Delivery Long Island" (hereinafter KeySpan). In the years that followed, there were numerous changes in the ownership of the site.
In February 2007, KeySpan entered into an "Order on Consent and Administrative Settlement" (hereinafter the consent order), with the respondent/defendant New York State Department of Environmental Conservation (hereinafter the DEC), pursuant to which KeySpan, as the former owner and operator of certain MGP sites throughout New York, agreed to undertake an investigation into the presence of hazardous waste at those locations "to allow the [DEC] to determine whether a consequential amount of hazardous waste has been diposed at [those sites] and, [*2]if so, whether the contamination presents a significant threat to public health and/or environment." KeySpan also agreed to, inter alia, retain "professional consultants, contractors . . . acceptable to the [DEC]," prepare and submit work plans to the DEC related to, inter alia, the development and implementation of remedial activities at the MGP sites, and "cooperate with the [DEC] . . . in soliciting public comment on the proposed remedial action plan . . . if any." In August 2007, the consent order was modified so as to make the site, as well as several other MGP sites, subject to the consent order. It is undisputed that National Grid NY (hereinafter National Grid) subsequently acquired KeySpan and, as a result, became responsible for the obligations set forth in the consent order.
In July 2011, in accordance with the consent order, National Grid submitted a Site Characterization Work Plan (hereinafter the SC Work Plan) to the DEC, informing it that hazardous materials were present at the site. Over the course of the next two years, National Grid conducted certain field activities at the site, including "soil boring and monitoring well installation" in accordance with the SC Work Plan, which was approved by the DEC in August 2013.
In 2014, the petitioner/plaintiff (hereinafter the petitioner) acquired title to the site and planned to redevelop it into "a hotel, retail space, community facility space and office space including medical offices." In anticipation thereof, National Grid obtained approval from the DEC to submit to it an Interim Site Management Plan (hereinafter ISMP), "that sets out controls for the site, including how soil should be handled and air quality monitoring." National Grid was advised by the DEC that the petitioner "could excavate as long as it followed the protocols outlined in the ISMP."
In January 2014, the petitioner submitted an application to the DEC for the site's inclusion in the Brownfield Cleanup Program (hereinafter the BCP) (see ECL 27-1401 et seq.). The Legislature passed the BCP in 2003 "to encourage [the] cleanup and redevelopment" of contaminated properties, known as "brownfield sites," that "threaten the health and vitality of the communities they burden" in exchange for certain benefits, including substantial tax credits and a release from liability (ECL 27-1403; see ECL 27-1421; Tax Law §§ 21-23; Matter of Lighthouse Pointe Prop. Assoc. LLC v New York State Dept. of Envtl. Conservation, 14 NY3d 161, 165-167). By letter dated February 19, 2014, the DEC denied the petitioner's application on two grounds. First, after noting that National Grid was already obligated under the consent order to "develop and implement a remedial program for the [S]ite," the DEC determined that the Site was ineligible for participation in the BCP because it was "the subject of an ongoing state enforcement action" (see ECL § 27-1405[2][e]). Second, the DEC determined that "the public interest would not be served by granting the application" (see ECL 27-1407[9]), since National Grid "[stood] ready to cooperate and complete the remediation in accordance with the [consent order]."
The petitioner subsequently commenced this hybrid proceeding and action seeking, inter alia, to annul the DEC's determination and a judgment declaring that its application was approved nunc pro tunc as of March 7, 2014, and that the DEC is liable for all damages suffered and costs incurred by the petitioner, including attorneys' fees, arising from the DEC's denial of the application. Around that same time, in June 2014, the DEC approved the ISMP that had been previously submitted to it by National Grid. According to the DEC, as of September 2014, the petitioner completed the excavation and "[i]t appear[ed] that the vast majority of contamination has been removed," and that "further on site work . . . is not likely to be needed." In a judgment dated October 16, 2015, the Supreme Court denied the petition and dismissed the hybrid proceeding and action, concluding that "the public interest . . . would not have been served by permitting [the petitioner] to enter the BCP program inasmuch as it would have triggered unnecessary financial obligations that would not have served the economic well being of the people of the state." The petitioner appeals.
"In a CPLR article 78 proceeding to review a determination of an administrative agency, the standard of judicial review is whether the determination was made in violation of lawful procedure, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion" (Matter of Sierra Club v Martens, 158 AD3d 169, 174 [internal quotation marks omitted]; see CPLR 7803[3]). "Courts 'regularly defer to the governmental agency charged with the responsibility for administration of [a] statute' in those cases where interpretation or application 'involves knowledge [*3]and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom,' and the agency's interpretation 'is not irrational or unreasonable'" (Matter of Lighthouse Pointe Prop. Assoc. LLC v New York State Dept. of Envtl. Conservation, 14 NY3d at 176, quoting Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459). "But where 'the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight'" (Matter of Lighthouse Pointe Prop. Assoc. LLC v New York State Dept. of Envtl. Conservation, 14 NY3d at 176, quoting Kurcsics v Merchants Mut. Ins. Co., 49 NY2d at 459; see Matter of Destiny USA Dev., LLC. v New York State Dept. of Envtl. Conservation, 63 AD3d 1568, 1569).
Here, with respect to the "public interest" exclusion set forth in ECL § 27-1407(9), it is evident that the Legislature did not intend to limit the DEC to considering only those factors specifically enumerated in that statute (see ECL 27-1407[9][a-g]). Nevertheless, the DEC's determination that the public interest would not be served by granting the petitioner's application because National Grid had already agreed to remediate the site pursuant to the consent order was irrational and unreasonable. We hold, consistent with the determinations reached by several other courts, that a "brownfield site" is not ineligible for acceptance into the BCP "on the ground that it would have been remediated in any event" (Matter of East Riv. Realty Co., LLC v New York State Dept. of Envtl. Conservation, 68 AD3d 564, 564 [internal quotation marks omitted]; see Matter of Destiny USA Dev., LLC v New York State Dept. of Envtl. Conservation, 63 AD3d at 1570-1571; Matter of HLP Props. LLC v New York State Dept. of Envtl. Conservation, 21 Misc 3d 658, 671). In addition, to the extent that the DEC denied the petitioner's application because, as the Supreme Court concluded, it would impose an "unnecessary" financial burden on the state, that consideration should not have factored into its determination. The legislative history reveals that the purpose of enacting the BCP was to, among other things, "enhance the health, safety, and welfare of the people of the state and their overall economic and social well being" (ECL 27-1403). The Division of Budget, when endorsing the BCP, noted that "[b]rownfields are abandoned, idled, or under-used properties where redevelopment is complicated by real or perceived environmental contamination . . . [and they] often pose not only environmental, but legal and financial, burdens on communities. Left vacant, contaminated sites can diminish the property value of surrounding property and threaten the economic viability of adjoining properties" (Budget Report on Bills, Bill Jacket, L 2003, ch 1 at 38). "[R]eal property qualifies as a 'brownfield site' for purposes of acceptance into the BCP so long as the presence or potential presence of a contaminant within its boundaries makes redevelopment or reuse more complex, involved, or difficult in some way" (Matter of Lighthouse Pointe Prop. Assoc. LLC v New York State Dept. of Envtl. Conservation, 14 NY3d at 177). With this in mind, any "financial misgivings" (id. at 167) concerning the fiscal impact of a property being accepted into the BCP on the state is irrelevant to the question of whether the public interest would be served by the granting of an application to participate in the BCP. The DEC is not tasked with acting as "a fiscal watchdog" (Destiny USA Dev. LLC v New York State Dept. of Envtl. Conservation, 19 Misc 3d 1144[A], 2008 NY Slip Op 51161[u] [Sup Ct, Onondanga], *16, affd 63 AD3d 1568).
Furthermore, the DEC's determination that the site was ineligible for acceptance into the BCP on the ground that it is was "subject to [an] on-going state . . . environmental enforcement action related to the contamination which is at or emanating from the site" is also irrational and unreasonable (ECL 27-1405[2][e]). There is no support in the language of the statute ECL 27-1405(2)(e) or in its legislative history for the DEC's conclusion that the consent order constituted an ongoing enforcement action within the meaning of ECL 27-1405(2)(e). The consent order, by its terms, was voluntarily entered into by National Grid's predecessor to "expedite the cleanup of the [MGP] Sites," and was not "an admission or finding of liability, fault, wrongdoing, or violation of any law, regulation, permit, order, requirement, or standard of care of any kind," and constituted a "settlement under, inter alia, ECL Article 27, Title 13" (see Destiny USA Dev., LLC v New York State Dept. of Envtl. Conservation, 63 AD3d at 1572). We reject the DEC's contention that a contrary conclusion must be reached because the site was subject to a consent order as opposed to a voluntary remediation agreement.
Contrary to the DEC's contention, the appeal has not been rendered academic as a result of the petitioner's activities at the site following the DEC's denial of its application for [*4]participation in the BCP. In light of the petitioner's claim that its remedial activities at the site pursuant to the consent order satisfied the requirements set forth in the BCP and that, therefore, its application should be approved nunc pro tunc as of March 7, 2014, it cannot be said that the petitioner's rights would not be affected by the annulment of the DEC's determination (see generally Matter of Lilakos v Lee, 148 AD3d 896, 897). However, the record in this hybrid proceeding/action is not sufficiently developed to determine whether the petitioner's remedial activities at the site pursuant to the consent order satisfied the requirements set forth in the BCP.
Accordingly, we remit the matter to the Supreme Court, Kings County, for a hearing and a determination on the issue of whether the petitioner's remedial activities at the site pursuant to the consent order satisfied the requirements set forth in the BCP and, thereafter, for the purpose directing the DEC to reconsider the petitioner's application to participate in the BCP based upon proper considerations and the record before the DEC at the time it considered the application (see Matter of Russia House at Kings Point, Inc. v Zoning Bd. of Appeals of Vil. of Kings Point, 40 AD3d 767, 768), without prejudice to the commencement of a new proceeding/action after the DEC renders a new determination of the application.
In light of our determination, we need not reach the parties' remaining contentions.
DILLON, J.P., COHEN, MILLER and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court